75 P.3d 153

**UNIVERSITY PHYSICIANS, INC., an Arizona non-profit corporation, Plaintiff–Appellee,**

v.

**PIMA COUNTY, a body politic and corporate; Rick Lyons, Pima County Assessor; Beth Ford, Pima County Treasurer; Mike Boyd, Supervisor, District 1; Dan Eckstrom, Supervisor, District 2; Sharon Bronson, Supervisor, District 3; Ray Carroll, Supervisor, District 4; Raul Grijalva, Supervisor, District 5; and Arizona Department of Revenue, Defendants–Appellants.**

No. 1 CA–TX 02–0006.

Court of Appeals of Arizona, Division 1, Department T.

Sept. 4, 2003.

Review Denied Feb. 10, 2004.

**64**

Lewis and Roca LLP By D. Douglas Metcalf, Diane Madenci, Tucson, Attorneys for Plaintiff/Appellee.

Barbara LaWall, Pima County Attorney, By Terri A. Roberts, Deputy County Attorney, Tucson, Attorneys for Defendants/Appellants.

## OPINION

SNOW, Judge.

¶ 1 Pima County, its Board of Supervisors, Assessor, and Treasurer ("the County") appeal from a summary judgment that declared the property of University Physicians, Inc. ("UPI") exempt from ad valorem taxation under Arizona Revised Statutes ("A.R.S.") § 42–11107 (1999). The tax court's judgment also refunded the taxes UPI paid Pima County on UPI's real and business personal property for tax years 2000 and 2001.

¶ 2 This appeal principally presents the question whether the tax court erred in holding as a matter of law that UPI is a "charitable institution[ ] for the relief of the ... afflicted." A.R.S. § 42–11107.[1] Because we differ with the tax court's interpretation of the term "afflicted" as set forth in A.R.S. § 42–11101(1) (Supp.2002), and because there are resulting issues of fact as to whether UPI's property is used "for the relief of the afflicted," we reverse the summary judgment and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 3 UPI is an Arizona nonprofit corporation comprised of the faculty physicians of the University of Arizona College of Medicine. The purpose for its corporate existence is to assist in the college's teaching, research, and patient care missions. UPI operates various clinics that provide health care services within Pima County. All of UPI's clinics formerly operated within the University Medical Center or at other locations on the University of Arizona Health Sciences Campus. Due to space constraints at the hospital and the reduction of space on the Health

---

1. Section 42–11107 provides:
   Property of charitable institutions for the relief of the indigent or afflicted, appurtenant land and their fixtures, equipment and other reasonably required property are exempt from taxation if the institutions and property are not used or held for profit.

   The tax court determined that UPI is not an "institution for the relief of the indigent," and neither party appeals that determination. Hence, we only consider whether UPI was an institution for the relief of the afflicted.

Sciences Campus, UPI has moved a number of its clinics and other facilities off campus.

¶ 4 UPI has a number of separate off-campus locations including: (1) the Tucson Breast Center which conducts breast cancer screening and diagnostic mammography; (2) the Ophthalmology Clinic which diagnoses and treats diseases of the eye and vision impairments; (3) the Children's Multi–Specialty Clinic which treats children in eight pediatric sub-specialties; (4) the Alvernon Clinics consisting of ophthalmology, neurology, orthopedic and family practice offices; (5) the Ambulatory Surgery Center that performs outpatient surgery primarily consisting of cataract removal; (6) the Community Heart and Lung Program; and (7) the Administrative Office that provides the administrative services for all of the other clinics. UPI uses all its clinic locations to provide medical care to patients. No patient care activities are conducted at the Administrative Office. UPI owns personal property at all of its owned and leased locations.

¶ 5 The County recognized UPI as exempt from ad valorem property taxation from 1988 through 1999. However, following this court's ruling in an action that concerned the exempt status of off-campus clinics owned by the University Medical Center Corporation, the County declined to give UPI exempt status for tax years 2000 and 2001. *See generally Univ. Med. Ctr. Corp. v. Ariz. Dep't of Revenue,* 201 Ariz. 447, 36 P.3d 1217 (App.2001). For tax year 2000, the County assessed real property taxes against two off-campus buildings owned by UPI and business personal property taxes against personal property at four off-campus clinics and the Administration Office. For tax year 2001, the County made real property assessments against three off-campus buildings owned by UPI and the same personal property assessments as in 2000, with the exception of the Children's Multi–Specialty Clinic.

¶ 6 In February 2001, UPI brought this action seeking a refund of taxes paid for the first half of 2000 and a declaration that it was exempt from ad valorem property taxes under A.R.S. §§ 42–11104 (1999), 42–11105(B) (Supp.2002), and 42–11107 (1999). UPI later amended its complaint to encompass taxes

paid for the second half of 2000 and the first half of 2001.

¶ 7 UPI moved for partial summary judgment on the theory that, as a matter of law, it was exempt from ad valorem property taxation under A.R.S. § 42–11107 as a charitable institution for the relief of the afflicted.

¶ 8 *After argument, the tax court ruled in* favor of UPI. The County appeals from the judgment granting UPI's motion for partial summary judgment.

## ANALYSIS

¶ 9 On appeal from summary judgment, this court reviews *de novo* whether genuine issues of material fact exist and "whether the superior court correctly applied the substantive law." *Salt River Pima–Maricopa Indian Cmty. Sch. v. State,* 200 Ariz. 108, 110–11, ¶ 7, 23 P.3d 103, 105–06 (App. 2001); *see also Circle K Stores, Inc. v. Apache County,* 199 Ariz. 402, 405, ¶ 7, 18 P.3d 713, 716 (App.2001).

¶ 10 Section 42–11107 establishes three conditions to qualify for the tax exemption it creates. First, the institution seeking exemption must be a "charitable" institution. A.R.S. § 42–11107. Second, it must be an institution "for the relief of the indigent or afflicted." *Id.* Finally, neither the institution, nor the property in question, can be "used or held for profit." *Id.* On appeal, the County argues that there are material issues as to UPI's qualifications under each of these three criteria. Because we agree with the County that the tax court misinterpreted § 42–11101(1) in granting summary judgment to UPI, we need not address whether UPI is a charitable institution or whether it operates on a for-profit basis.

**A. The Tax Court Erred in Ruling as a Matter Of Law that UPI Is "an Institution for the Relief of . . . the Afflicted."**

¶ 11 To qualify for the tax exemption pursuant to A.R.S. § 42–11107, UPI must not merely be a charitable non-profit institution but must also be "for the relief of the . . . afflicted." A.R.S. § 42–11107. In determining that UPI was an institution for the relief

**66**

of the afflicted the tax court made several erroneous determinations about both the meaning of the statute and how it should be applied to the operations of UPI.

### 1. The Statutory Definition of "Afflicted"

¶ 12 In its minute entry granting UPI's motion for summary judgment, the tax court determined that A.R.S. § 42–11107 was "designed to provide a benefit to charitable institutions who are providing health care services to the community on a not-for-profit basis." Consistent with this view of the statute, the tax court broadly applied the statutory definition of "afflicted." It determined that UPI was treating the afflicted because:

> The vast majority of patients seen by UPI physicians, as is the case with most physicians in Pima County, have already been diagnosed with a serious medical condition or have symptoms indicative of a serious medical condition which, if left untreated, might lead to serious impairment, injury or death, or which would take far longer to heal if left to mother nature, rather than the skilled hands of a physician. The fact that UPI also provides preventative care to prevent persons from becoming members of the "afflicted" does not render its mission any less charitable or take it out of the purview of this statute.

¶ 13 The court, thus, apparently determined that the afflicted included: (1) persons diagnosed with a serious medical condition; (2) persons with symptoms that might develop into a serious medical condition; (3) persons with a condition that would take longer to heal if left untreated; or (4) persons receiving preventive care.

¶ 14 We disagree with the implication that § 42–11107 was necessarily designed to provide tax exemption to charitable institutions that provide health care. We also disagree

with the tax court's interpretation of the statutory definition of "afflicted."

¶ 15 Prior to 1997, most of the statutory exemptions to property taxes were set forth in a single statute—former A.R.S. § 42–271(A) (1991). In the general recodification of Title 42 in 1997, the legislature divided the previous single exemption statute into several different exemption statutes based on subject matter. *See* 1997 Ariz. Sess. Laws, ch. 150, §§ 171–72.

¶ 16 For example, the legislature took the exemptions pertaining to hospitals and health care institutions in the former A.R.S. § 42–271(A) and compiled them in a separate statute—A.R.S. § 42–11105.[2] In addition to providing an exemption to nonprofit hospitals, section 42–11105 also provides a tax exemption for nonprofit health care institutions. A.R.S. § 42–11105(B). That exemption is limited however, to "health related institutions that provide health care services to persons who are handicapped or sixty-two years of age or older." *Id.*

¶ 17 At the same time, the legislature took all the exemptions pertaining to charitable institutions for the relief of the indigent or the afflicted in the former A.R.S. § 42–271(A) and compiled them in a single statute—A.R.S. § 42–11107.

¶ 18 UPI did not move for summary judgment based on its status as a health care institution pursuant to A.R.S. § 42–11105. Rather, it sought an exemption pursuant to A.R.S. § 42–11107 as a charitable institution for the relief of the afflicted. Because the legislature simultaneously codified A.R.S. § 42–11105 as an exemption for health care institutions, there is no evidence that would support the tax court's notion that the statute was meant to specially apply to health care institutions. The statute was meant to apply to all charitable institutions for the relief of the afflicted whether or not they provide health care.

2.  Section 42–11105 provides in part:
    **42–11105. Exemption for health care property**
    A. Hospitals for the relief of the indigent or afflicted, appurtenant land and their fixtures and equipment are exempt from taxation if they are not used or held for profit.

    B. Property that is used to operate a health care institution that provides medical, nursing or health related services to persons who are handicapped or sixty-two years of age or older is exempt from taxation if the property is not used or held for profit.

¶ 19 "Afflicted" is expressly defined in A.R.S. § 42–11101(1).

> In this article, unless the context otherwise requires:
>
> 1. "Afflicted" means persons who, because of a mental or physical condition, illness or condition of distress, adversity or harassment, or imminent risk of such condition, *are unable to reasonably take care of themselves or their families or to properly function in society without periodic or continuous assistance.*

A.R.S. § 42–11101(1) (emphasis added).

¶ 20 In defining "afflicted," the legislature did not require that an affliction be the result of specifically identified ills. Rather, afflictions can arise from mental, physical, social or other conditions or even the "*imminent risk*" *of such conditions.* A.R.S. § 42–11101(1). However, to qualify as "an affliction," a condition or circumstance must have a specific effect on the persons suffering from it. According to the statute, to be afflicted, persons must be "unable to reasonably take care of themselves or their families or to properly function in society without periodic or continuous assistance." *Id.*

¶ 21 We are obliged to interpret the words of a statute "according to the common and approved use of the language." A.R.S. § 1–213 (2002). Thus "periodic" assistance means assistance "recurring at regular intervals." *See* 11 *Oxford English Dictionary* 560 (2d ed.1989). "Continuous" assistance is assistance "without interruption" or "having no ... breaks." *See* 3 *Oxford English Dictionary* 830 (2d ed.1989).

¶ 22 Some persons or classes of persons seeking health care from UPI may qualify as "afflicted" under the statutory definition applicable to A.R.S. § 42–11107. Thus, some or all of UPI's operations may qualify as institutions for the relief of the afflicted. However, UPI, as an organization that generally provides health care services, is not entitled to special consideration in the interpretation of the term "afflicted" in determining whether it qualifies for the exemption. Laws that "exempt[ ] property from taxation must be strictly construed and the presumption is against the existence of an exemp-tion." *Hillman v. Flagstaff Cmty. Hosp.,* 123 Ariz. 124, 125–26, 598 P.2d 102, 103–04 (1979) (citing *City of Phoenix v. Bowles,* 65 Ariz. 315, 319, 180 P.2d 222, 224 (1947)); *see also Conrad v. County of Maricopa,* 40 Ariz. 390, 393, 12 P.2d 613, 614 (1932).

¶ 23 According to the plain meaning of the statute, not every illness, accident, mental or social condition produces an affliction. Some conditions do not prevent persons from reasonably taking care of themselves or their families or from properly functioning within society. Other conditions requiring treatment may only require one or a few visits to a medical clinic. Such conditions do not require care "recurring at regular intervals" or "without interruption." As a result, appropriate treatment for some accidents or conditions, as well as many preventive treatments and diagnostic and screening procedures, do not constitute "relief to the afflicted" no matter how desirable or necessary to the effective practice of medicine, psychology, other healing arts or social work.

¶ 24 Furthermore, for a person under the risk of an afflicting condition to qualify as "afflicted," the risk of the condition must be imminent and the risk itself must make the person afflicted. *See* A.R.S. § 42–11101(1) (" 'Afflicted' means persons who, because of ... [an] imminent risk of [an afflicting] condition, are unable to reasonably take care of themselves or their families or to properly function in society."). To be "imminent," a risk must be "close at hand in its incidence." 7 *Oxford English Dictionary* 685 (2d ed.1989). Thus, the partner of an abusive spouse may be "afflicted," because the imminent risk of being abused may make it necessary for the spouse to obtain shelter or other services to function normally in society. If a shelter otherwise qualifies under the statute, it may be entitled to the tax exemption because it provides relief to a person who is afflicted by an imminent risk.

¶ 25 On the other hand, a person with a family history of cancer may be at an increased risk for developing a malignancy. However, the malignancy cannot be said to be imminent nor does the increased risk of malignancy alone make the person unable to properly function in society. While the

increased risk may indicate the medical necessity of regular diagnostic or screening procedures, the medical necessity of such procedures is not the standard established by the legislature for defining the person as afflicted. Thus, a person at risk of developing a condition, without more, is not "afflicted" by that increased risk, and the diagnostic, screening or preventive treatments provided to the person, while perhaps medically necessary, are not for the relief of the afflicted.

¶ 26 The legislature could have expanded the definition of "afflicted" as it applies to charitable institutions. However, it has not done so and it is not obliged to do so. *Conrad*, 40 Ariz. at 393, 12 P.2d at 614 (stating, in defining tax exemptions, that "the Legislature cannot grant more, but may give much less than the exemption permitted by the Constitution.").

¶ 27 The tax court interpreted the statutory definition of "afflicted" too broadly in determining that every person with a possibility of developing a serious medical condition, every person who could be healed more quickly under the care of a physician, and at least certain persons receiving preventive care may be "afflicted." Some clinics operated by UPI may principally render treatment in the form of diagnostic and preventive care, routine immunizations, medical services that can be completed in a single or a few visits, well-person and well-baby physical examinations, one-time out-patient treatments for non-serious injuries, and cosmetic and other elective surgeries and treatments. Under normal circumstances, persons who visit medical clinics only for these kinds of care cannot be characterized as among the "afflicted" within the meaning of A.R.S. § 42–11107. Thus, because we find that the tax court applied a broader definition of "afflicted" than the legislature specified, we reverse and remand for further proceedings.

### 2. Applying the Definition To UPI's Operations

¶ 28 Because it applied a broad meaning of afflicted, the tax court saw no need to examine every facility of UPI to determine whether it provided "relief to the afflicted" and thus qualified for an exemption from taxation.

> This Court does not feel it is necessary to analyze here, the purpose of each property, building, or piece of equipment. There is no evidence that would suggest that UPI is using a facility or its equipment for a purpose other than for the relief of the afflicted or one that is clearly outside of its charitable mission.

However, when the tax court applies the statutory definition on remand, a more particularized analysis is required. Such an analysis may serve to distinguish between UPI property that is entitled to the exemption and UPI property that is not because UPI operates a number of different clinics that provide a number of different treatments and diagnostic services for a broad range of patients with different complaints. While some or all of these medical clinics may principally render periodic or even continuous care to patients who cannot reasonably function in society or take care of themselves or their families without it, others may principally provide care to persons who are not afflicted. Still other UPI properties may not be used to provide care at all.

¶ 29 Our supreme court has held that, in granting tax exemptions like those at issue here, each of a charitable institution's properties must be evaluated to determine whether it is principally used to provide "relief to the afflicted." *Conrad*, 40 Ariz. at 394, 12 P.2d at 615. If it is not, then that property is not entitled to the exemption even if the charity as a whole exists to provide relief to the afflicted. *Id.*

¶ 30 In *Conrad*, Arizona Lodge No. 2 of Free and Accepted Masons sought to recover ad valorem taxes assessed on their Masonic Temple and paid to Maricopa County. *Id.* at 392, 12 P.2d at 614. In affirming the judgment denying such relief, the court assumed that the Lodge, as an organization, was a charitable institution for the relief of the indigent and afflicted, but it did not agree that the Lodge's temple was entitled to the tax exemption. *Id.* at 394–95, 12 P.2d at 615. It noted that while the Constitution authorized the legislature to grant tax exemptions to charitable organizations, the legislature

had granted tax relief only to the separate property used by those organizations to provide relief for the afflicted. *Id.* at 393–94, 12 P.2d at 614–15.

> We think, therefore, that the 'charitable institutions' referred to in the [statute] . . . are physical property or buildings, whose *principal use* is for the relief of the indigent or afflicted, when such property is not used or held for profit, and not the organizations themselves, even though charitable in their nature, which may or may not hold certain of their property as exempt.

*Id.* at 394, 12 P.2d at 615 (emphasis added).

¶ 31 The court noted that the temple had a number of rooms that were used and rented by the Lodge but that "[n]one of [those] rooms [were] used in any manner for the relief of the indigent or the afflicted." *Id.* Thus, even though the Lodge used money from the rental of the temple for its charitable purposes, the court held that the temple itself was not entitled to receive a tax exemption. *Id.* at 395, 12 P.2d at 615.

■ ¶ 32 Therefore, according to the reasoning in *Conrad,* even though UPI as a whole might be a charitable institution for the relief of the afflicted, each of its properties is not necessarily qualified for the tax exemption. Only those properties used principally to provide relief to the afflicted are so entitled. Thus, each of UPI's separate operations must be evaluated to determine whether it principally provides relief for the afflicted, and thereby qualifies for a tax exemption.

## CONCLUSION

¶ 33 Because the tax court applied a broader definition of "afflicted" persons than A.R.S. § 42–11101(1) can be read to permit, the tax court erred in determining as a matter of law that the taxpayer and its off-campus properties were "principally" used "for relief of the . . . afflicted." Because the taxpayer does not prevail on this appeal, we deny its request for an award of attorney's fees under A.R.S. § 12–348(B) (2003). The judgment is reversed and remanded for proceedings consistent with this opinion.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and CECIL B. PATTERSON, JR., Judge.