IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

NOV 29 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| VOLUNTEER CENTER OF SOUTHERN ARIZONA, an Arizona non-profit corporation, | ) ) ) ) | |
| Plaintiff/Appellant, | ) ) | 2 CA-CV 2006-0084 DEPARTMENT B |
| v. | ) ) | O P I N I O N |
| WILLIAM STAPLES, Pima County Assessor; BETH FORD, Pima County Treasurer; PIMA COUNTY; and ARIZONA DEPARTMENT OF REVENUE, | ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20055184

Honorable Michael Alfred, Judge

REVERSED AND REMANDED

Lewis and Roca, LLP
  By D. Douglas Metcalf                                          Tucson
                                          Attorneys for Plaintiff/Appellant

Barbara LaWall, Pima County Attorney
  By Terri A. Roberts                                          Tucson
                                          Attorneys for Defendants/Appellees

E C K E R S T R O M, Presiding Judge.

¶1 Plaintiff/appellant Volunteer Center of Southern Arizona sought a judgment declaring its entire office building exempt from real property taxes and asking the trial court to order defendants/appellees, William Staples, the Pima County Assessor; Beth Ford, the Pima County Treasurer; Pima County; and the Arizona Department of Revenue (collectively, the Assessor), to refund the taxes the Center had paid for the portion of the property it leases to another nonprofit corporation. After the trial court denied the Center's motion for summary judgment, it found no issues remained and entered judgment against the Center. For the following reasons, we reverse.

¶2 The underlying facts are not in dispute. The Center and JobPath, Inc. are nonprofit corporations exempt from federal income tax under 26 U.S.C. § 501(c)(3). The Center owns a 9,379-square-foot office building and uses approximately two-thirds of the space for its charitable activities. It leases the remaining one-third to JobPath, which also uses the space for charitable activities. The Assessor exempted from property taxes the portion of the property the Center uses but denied an exemption for the space JobPath leases.

¶3 The Center paid the taxes assessed against it for the 2004 tax year but filed an action pursuant to A.R.S. § 42-11005, arguing it is entitled to a refund because the taxes were illegally collected. In its answer, the Assessor asserted the Center did not qualify for an exemption under the relevant statutory provisions because it leased the space for profit. The Center moved for summary judgment and the trial court denied its motion, reasoning

2

that leasing premises "is not charitable in nature and does not qualify the property in question for exemption." Because the denial of summary judgment left no issue to resolve, the Assessor requested judgment in its favor, which the court granted. This appeal followed.

¶4　　　　　　Because the material facts are undisputed, we review *de novo* whether the trial court correctly applied the law to the facts before it. *See Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, ¶ 6, 91 P.3d 1031, 1032-33 (App. 2004). The Center applied for exemption under two statutes: A.R.S. §§ 42-11107 and 42-11121. Section 42-11107 creates an exemption for the property of "charitable institutions for the relief of the indigent or afflicted" as long as the "property [is] not used or held for profit." The second statute, § 42-11121, imposes the same requirement that the property not be "used or held for profit." Under the latter provision, the property must also be "owned by a community service organization the mission of which is to serve a population that includes persons who are indigent or afflicted . . . and that qualifies as a charitable organization and is recognized under § 501(c)(3) of the internal revenue code."

¶5　　　　　　The Assessor concedes the Center met the latter requirement but maintains that, by leasing part of its property to JobPath, the Center "used or held" the property for profit. *See* §§ 42-11107, 42-11121. The Center counters that, as illustrated by A.R.S. §§ 42-11154 and 42-11155, Arizona's property tax exemption scheme clearly provides a tax

3

exemption for property owned by one nonprofit organization and used by another.[1]

Applying this principle, the Center contends that the mere receipt of revenue from JobPath under the lease did not convert its property into one "used or held for profit"—just as raising revenue in any other context does not divest a nonprofit organization of its tax-exempt status.

¶6    In interpreting how a statutory scheme applies, our primary objective is to give effect to the intent of the legislature; the best evidence of its intent is the language of the statute itself. *Vega v. Sullivan*, 199 Ariz. 504, ¶¶ 8-9, 19 P.3d 645, 648 (App. 2001). "[T]ax statutes relating to the same subject should be read together and construed as a

_____

[1]Section 42-11154 provides:

> 1.    Nonprofit organization status may be established by a letter of determination issued in the organization's name by the United States internal revenue service or the department of revenue recognizing the organization's tax exempt status under § 501(c)(3) of the internal revenue code or under § 43-1201.

> 2.    The requirement that property is not used or held for profit may be met by a letter of determination described in paragraph 1 of this section and issued in the name of the organization holding title to the property and for each organization using the property.

Section 42-11155 provides:

> The exemptions provided by article 3 of this chapter relating to charitable institutions do not apply to property owned by charitable institutions but primarily held or used by others whose use is not exempt from taxation by article 3 of this chapter or by the Constitution of Arizona.

whole," *Arizona Department of Revenue v. Maricopa County*, 120 Ariz. 533, 535, 587 P.2d 252, 254 (1978), a process which includes reading the statute in accordance with any statutory definitions of the terms used. *See US West Commc'ns, Inc. v. City of Tucson*, 198 Ariz. 515, ¶ 12, 11 P.3d 1054, 1059 (App. 2000). "If a statute's meaning is manifestly unambiguous when all its language is considered as a whole, that meaning is conclusive." *Id*.

¶7        Applying those principles, we agree with the Center that the relevant statutory provisions, when read together, allow a nonprofit organization to lease its property to another nonprofit organization without forfeiting its tax-exempt status. In § 42-11154, the legislature provided a specific method by which nonprofit organizations can demonstrate that property is "not used or held for profit." It states: "Nonprofit organization status may be established by a letter of determination issued in the organization's name by the United States internal revenue service or the department of revenue recognizing the organization's tax exempt status under § 501(c)(3) of the internal revenue code or under § 43-1201." § 42-11154(1). And the "requirement that property is not used or held for profit may be met by a letter of determination described [in § 42-11154(1)] and issued in the name of the organization holding title to the property and for each organization using the property." § 42-11154(2). In short, the legislature unambiguously instructs us to determine whether property is "used or held for profit" by referring to the official federal tax status of the organization owning and using the property—not the nature of the specific financial

5

transactions conducted on the property. That approach is consistent with traditional notions of how nonprofit organizations are entitled to function. *See S. Methodist Hosp. & Sanatorium v. Wilson*, 51 Ariz. 424, 431-32, 77 P.2d 458, 462 (1938) ("[W]e think the institution is properly characterized as a charitable one, notwithstanding the fact that it charges for most . . . of [its] services . . . so long as its receipts are devoted to the necessary maintenance of the institution and . . . the purpose for which it was organized."), *overruled in part on other grounds by Ray v. Tucson Med. Ctr.*, 72 Ariz. 22, 230 P.2d 220 (1951); *accord* Restatement (Third) of Trusts § 28 cmt. a(1) (2003).

¶8        The Assessor contends that, if an organization can satisfy the requirement that its property is "not used or held for profit" simply by virtue of its § 501(c)(3) status, the specified criteria in § 42-11121 for exempting such an organization's property would have no meaning. *See Welch-Doden v. Roberts*, 202 Ariz. 201, ¶ 22, 42 P.3d 1166, 1171 (App. 2002) (we must interpret statutes to give each phrase meaning). But § 42-11154 provides an alternative method by which a nonprofit organization can establish that its property is not being "used or held for profit": a letter of determination from the Arizona Department of Revenue recognizing its tax-exempt status under A.R.S. § 43-1201. Section 43-1201 lists sixteen types of organizations that are exempt from state income tax other than those that are exempt from federal income tax under 26 U.S.C. § 501(c)(3). Therefore, because § 501(c)(3) recognition is not the only acceptable way an organization can meet the requirement that its property not be "used or held for profit," our interpretation of the

legislature's intent in § 42-11154 does not render either requirement of § 42-11121 superfluous.

**¶9** The Assessor argues that the legislature's use of the word "may" in § 42-11154(2) as part of the phrase, "[t]he requirement that property is not used or held for profit may be met," provides him the discretion to look beyond an organization's § 501(c)(3) status in determining whether the property is "used or held for profit." But the implied subject of that phrase is the taxpaying organization—which alone has the duty to meet any statutory requirements. We therefore conclude the taxpaying organization is the beneficiary of any discretion bestowed by the statute.

**¶10** The Assessor also maintains that several Arizona cases support his refusal to exempt all the Center's property from taxation. *See Conrad v. County of Maricopa*, 40 Ariz. 390, 12 P.2d 613 (1932); *Tucson Junior League v. Emerine*, 122 Ariz. 324, 594 P.2d 1020 (App. 1979); *Kunes v. Mesa Stake of Church of Jesus Christ of Latter-Day Saints*, 17 Ariz. App. 451, 498 P.2d 525 (1972). In those cases, our courts examined the organization's actual physical use of the property; if the use was noncharitable, the entities were not entitled to a tax exemption—even if the proceeds were ultimately directed to charitable purposes. *See Conrad*, 40 Ariz. at 394-95, 12 P.2d at 615; *Tucson Junior League*, 122 Ariz. at 325, 594 P.2d at 1021; *Kunes*, 17 Ariz. App. at 453, 498 P.2d at 527. But those cases predate the legislature's enactment of the language now found in § 42-11154, which first provided a statutory method for establishing that an organization's

7

property is not being "used or held for profit." *See* former A.R.S. § 42-271(D), 1991 Ariz. Sess. Laws, ch. 169, § 1; *see also Hause v. City of Tucson*, 199 Ariz. 499, ¶ 10, 19 P.3d 640, 643 (App. 2001) (we will presume legislature intended to supersede court's interpretation of statute if language or effect of statute clearly requires that conclusion).

¶11        Moreover, to the extent the reasoning of those cases survives that statutory revision, it would not change the result here. Although the Assessor concedes that JobPath used the property leased to it by the Center for charitable purposes,[2] it maintains the Center used its property for profit by leasing it to JobPath at the market rate.[3] And it maintains that we must evaluate the owner's use of the property, not the tenant's, in determining the property's tax status. But, in *Conrad*, our supreme court held that a Masonic temple owned by a charitable institution was not tax-exempt because none of the rooms the organization rented was "used in any manner for the relief of the indigent or afflicted." 40 Ariz. at 394, 12 P.2d at 615. Similarly, in *Kunes*, the court examined the actual activity on the land, in that case farming. 17 Ariz. App. at 453, 498 P.2d at 527. Thus, those cases focused on the actual physical use to which the property was put—rather than merely the owners' acts—in

---

[2]The Center emphasizes, and the Assessor does not dispute, that JobPath would meet the requirements of A.R.S. § 42-11121 for holding property exempt from taxation.

[3]We are skeptical that the Center's leasing the property at a market rate would itself demonstrate that the property is being used for profit—even if we were to conclude that the Center's mere act of leasing the property was relevant to its tax status. *See S. Methodist Hosp. & Sanatorium v. Wilson*, 51 Ariz. 424, 431-32, 77 P.2d 458, 462 (1938) (charitable organizations entitled to charge for services without loss of charitable status), *overruled on other grounds by Ray v. Tucson Med. Ctr.*, 72 Ariz. 22, 230 P.2d 220 (1951).

8

evaluating the tax status of the property. Further, §§ 42-11154 and 42-11155 specifically require us to consider the status of both owners and users of property in evaluating whether the property is being "used or held for profit." Those statutes are inconsistent with the Assessor's implicit contention that we must ignore JobPath's charitable use of the property in determining the tax status of the portion JobPath leases.

¶12 We conclude that, in promulgating § 42-11154, the legislature intended to provide a simple, bright-line rule, anchored in the ultimate function of the organizations owning or using property, for determining whether the property is being "used or held for profit." Specifically, that section provides that, if one § 501(c)(3) organization leases property to another § 501(c)(3) organization, the property is "not used or held for profit" and is entitled to a property tax exemption. We therefore conclude the Center was entitled to a tax exemption on its entire property, and the trial court erred by entering judgment in favor of the Assessor.

¶13 As the prevailing party in an action against the county challenging the collection of taxes, the Center requests its attorney fees incurred below and on appeal pursuant to A.R.S. § 12-348(B)(1). We grant the Center's request upon its compliance with Rule 21, Ariz. R. Civ. App. P., 17B A.R.S. *See Cornman Tweedy 560, LLC v. City of Casa Grande*, 213 Ariz. 1, ¶ 32, 137 P.3d 309, 316 (App. 2006).

¶14 The judgment is reversed, and the case is remanded for proceedings consistent with this decision.

9

_____
PETER J. ECKERSTROM, Presiding Judge

CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PHILIP G. ESPINOSA, Judge