189 P.3d 1096

**TUCSON BOTANICAL GARDENS, INC.,**
an Arizona nonprofit corporation,
**Plaintiff/Appellee,**

v.

**PIMA COUNTY, a county in the State of Arizona and a political subdivision of the State of Arizona, Defendant/Appellant.**

**No. 1 CA–TX 07–0007.**

Court of Appeals of Arizona,
Division 1, Department T.

May 20, 2008.

---

Gabroy, Rollman & Bossé, P.C. By Steven L. Bossé, Richard A. Brown, Tucson, Attorneys for Plaintiff/Appellee.

Barbara LaWall, Pima County Attorney By Terri A. Roberts, Deputy County Attorney, Tucson, Attorney for Defendant/Appellant.

## OPINION

NORRIS, Judge.

¶ 1 By statute, property of musical, dramatic, dance, and community arts groups; botanical gardens; museums; and zoos, qualified as non-profit charitable organizations, is exempt from real property taxes if the property is "used for those purposes and not used or held for profit." Ariz.Rev.Stat. ("A.R.S.") § 42–11116 (2006). The issue presented in this appeal is whether, for tax year 2005, Plaintiff/Appellee Tucson Botanical Gardens, Inc. ("TBG"), a qualified non-profit charitable organization, was entitled to this exemption on the portion of its property it used to operate a gift shop, exhibit art for sale, and rent to third parties for various activities, such as weddings, private meetings, or parties. On the facts presented in this case, we hold the exemption applied to this property. TBG, as a federally qualified non-profit charitable organization, used this property either exclusively or primarily for its own charitable and educational botanical garden purposes and neither used nor held this property for profit.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The material facts are not in dispute. TBG is an Arizona corporation qualified as a non-profit charitable organization under § 501(c)(3) of the United States Internal Revenue Code and A.R.S. § 43–1201. TBG is dedicated to horticultural and ecological education. It operates 16 different gardens representing a variety of gardening traditions and botanical themes on its 5.74 acre (249,840 square feet) site in central Tucson. Six buildings totaling 8,533 square feet are located on the site. A meeting hall known as "Porter Hall," a "sun porch," (collectively, unless otherwise specified, the "meeting areas") and a gift shop are located in Building

2. According to Defendant/Appellant Pima County ("County"), the gift shop and meeting areas encompass 2,101 square feet out of Building 2's 3,887 square feet.[1] TBG designed the gift shop to enhance its educational mission and the books and other materials sold are primarily educational. In addition to educational items, however, TBG also sells non-educational items such as stationary, napkins, baskets, salsa seasonings, dishes, wall ornaments, hats, and t-shirts. TBG makes a profit from the gift shop in that its receipts from sales exceed the cost of goods sold. But it does not make a profit from the shop if staffing and utility costs, the value of unpaid rent for the space it occupies, and other operating expenses are considered.

¶ 3 Porter Hall is one of TBG's main meeting rooms; it is used primarily by TBG for its staff and committee meetings. TBG does, however, exhibit art for sale in the meeting areas and it earns a commission on the occasional art sales.[2] This commission income does not cover the true cost of TBG's operation of the meeting areas. TBG also rents the meeting areas to third parties from time to time for various activities such as weddings, private parties, and meetings. TBG does not realize a profit from these rental activities.

¶ 4 From its inception through the 2004 tax year, TBG enjoyed a full exemption from taxes on its real property as a not-for-profit corporation. For the 2005 tax year, however, the County advised TBG it would only receive a partial exemption because the County had determined the gift shop and meeting areas were not exempt from taxation under A.R.S. § 42–11116. That statute reads as follows:

> Property of musical, dramatic, dance and community arts groups, botanical gardens, museums and zoos, qualified as nonprofit charitable organizations under § 501(c)(3) of the internal revenue code or under § 43–1201, is exempt from taxation if the

property is used for those purposes and not used or held for profit.

(footnote omitted).

¶ 5 After unsuccessfully asserting it was entitled to the exemption authorized by A.R.S. § 42–11116, TBG paid in full, under protest, the 2005 property taxes assessed by the County on the gift shop and meeting areas.

¶ 6 TBG then filed a direct appeal in the superior court, *see* A.R.S. §§ 42–16201(A), – 16207(A) (2006), and requested a refund and a determination that all of its property was tax exempt and had been improperly valued, classified, and assessed by the County. After briefing and oral argument, the tax court granted summary judgment in favor of TBG. The court ruled TBG's property, including the gift shop and meeting areas, was exempt from property taxes under the statute for tax year 2005. The County timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21(A)(1), –170(C), and – 2101(B) (2003).

## DISCUSSION

### A. Standard of Review

¶ 7 Relying on the qualifying language contained in A.R.S. § 42–11116 ("[p]roperty of ... botanical gardens ... is exempt from taxation if the property is used for those purposes and not used or held for profit"), the County argues TBG's gift shop and meeting areas were not exempt from taxation because they were not being used for purposes of a botanical garden and were being used or held for profit. To decide whether the County is right, we must interpret the meaning of the phrase "used for those purposes and not used or held for profit." Interpretation of a statute presents a question of law that we review de novo. *Thomas v. Thomas*, 203 Ariz. 34, 36, ¶ 7, 49 P.3d 306, 308 (App.2002).

---

1. TBG alleged the gift shop and the meeting areas occupied 1,356 square feet in Building 2. For purposes of this appeal, the difference in the parties' calculation of this square footage is immaterial.

2. The evidence in the record shows the art exhibits were botanically themed.

¶ 8 When interpreting tax exemptions, we are instructed to strictly construe them "because they violate the policy that all taxpayers should share the common burden of taxation." *State ex rel. Arizona Dep't of Revenue v. Capitol Castings, Inc.,* 207 Ariz. 445, 447, ¶ 10, 88 P.3d 159, 161 (2004). "Nevertheless, an exemption should 'not be so strictly construed as to defeat or destroy the [legislative] intent and purpose.'" *Id.* (quoting W.E. Shipley, Annotation, *Items or Materials Exempt from Use Tax as Used in Manufacturing, Processing, or the Like,* 30 A.L.R.2d 1439, 1442 (1953)). We start with the "used for those purposes" portion of the phrase.

### B. "Used for Those Purposes"

¶ 9 The structure of A.R.S. § 42–11116 reflects "used for those purposes" refers to the "property" of certain identified non-profit organizations ("musical, dramatic, dance, and community arts groups, botanical gardens, museums and zoos"). Read in context as pertinent here, the exemption applies to the "property of ... botanical gardens ... if the property is used for those purposes and not used or held for profit." Thus, as the County asserts, the exemption imposes a charitable use requirement; in the context of this case, property of a botanical garden is exempt only if it is used for the purposes of a botanical garden.

¶ 10 From this construction of the statute, the County argues the exemption is inapplicable to the gift shop and meeting areas. It asserts TBG is using the gift shop and meeting areas for non-exempt commercial purposes: TBG is selling non-educational items in the shop (salsa seasonings, wall ornaments, t-shirts, and the like) and renting the meeting areas for private parties or to exhibit art for sale. Thus, according to the County, TBG has lost its right to claim the exemption on the gift shop and meeting areas because it is using this space for non-exempt activities. We disagree. By focusing on the nature of a few of the items sold in the gift shop and TBG's incidental use of the meeting areas, the County has failed to take into account the primary use TBG makes of the gift shop and meeting areas. The Coun-

ty's narrow focus flies in the face of Arizona's approach to tax exemption statutes that impose a charitable use requirement. As discussed below, as long as the taxpayer's principal or primary use of its property is for the designated exempt purpose, the taxpayer is entitled to the exemption notwithstanding its occasional or incidental use of its property for other purposes.

¶ 11 Section 42–11116 is one of many statutes that grant a tax exemption but condition the exemption on a particular charitable use of the property by the taxpayer. A.R.S. §§ 42–11105 to –11108, –11112 to –11121. In interpreting and applying tax exemption statutes, our supreme court and this court have consistently recognized the taxpayer may claim the exemption despite some non-exempt use as long as the taxpayer is primarily using the property in the manner specified by the Legislature. *See, e.g., Conrad v. Maricopa County,* 40 Ariz. 390, 394, 12 P.2d 613, 615 (1932) (exemption for "other charitable institutions for the relief of the indigent or afflicted" refers to the "physical property or buildings, whose principal use is for the relief of the indigent or afflicted when such property is not used or held for profit"); *see also Univ. Physicians, Inc. v. Pima County,* 206 Ariz. 63, 68–69, ¶¶ 28–32, 75 P.3d 153, 158–59 (App.2003) (applying *Conrad* to conclude taxpayer's separate properties must each "be evaluated to determine whether it principally provides relief for the afflicted, and thereby qualifies for [the] exemption"); *Tucson Junior League of Tucson v. Emerine,* 122 Ariz. 324, 325, 594 P.2d 1020, 1021 (App.1979) (exemption denied for building "used for education" when "some of the rooms were used for non-educational meetings and all of the rooms were used during many months of the year for storing items" because "the nature and extent of the use of the property for educational purposes were insufficient to qualify for the exemption").

¶ 12 Evaluating a charitable institution's principal use of its property to determine whether it is entitled to an exemption that imposes a charitable use requirement is consistent with another provision of our property tax statutes, A.R.S. § 42–11155 (2006).

That statute has long specified[3] the statutory tax exemptions are inapplicable to property owned by charitable institutions if the property is "primarily" held or used by others who themselves are not exempt from taxation. Section 42–11155 reads as follows:

> The exemptions provided by article 3 of this chapter relating to charitable institutions do not apply to property owned by charitable institutions but primarily held or used by others whose use is not exempt from taxation by article 3 of this chapter or by the Constitution of Arizona.

¶ 13 We interpret words of a statute "according to the common and approved use of the language." A.R.S. § 1–213 (2002). Thus, "primarily" means "first of all," "principally," or "fundamentally." 12 *Oxford English Dictionary* 472 (2d ed. 1989); *Webster's Third New International Dictionary* 1800 (2002); *Webster's Seventh New Collegiate Dictionary* 675 (1970). The Legislature's use of the word "primarily" reflects its understanding that a charitable institution may allow occasional use of its property by a non-exempt third party without forfeiting its right to the exemption. The occasional use by a non-exempt third party does not transform property owned and used by a charitable institution for charitable purposes into property "primarily" held or used by others.

¶ 14 Applying these principles here, for tax year 2005, TBG did not lose the right to claim the exemption authorized by the statute because it sold non-educational items in the gift shop and rented the meeting areas for private parties or used that space to exhibit art for sale. TBG presented evidence, uncontroverted by the County, see *supra* ¶ 2; *infra* ¶¶ 22–23, that it was primarily using the gift shop and meeting areas for its own charitable, exempt purposes. As noted above, TBG designed the gift shop to enhance its educational mission, horticultural and ecological education, and it sold primarily educational items. And, TBG's sale of art in, and rental of, the meeting areas for private events was incidental to its own use of this property for events related to its tax exempt activities.

¶ 15 To summarize: TBG's sale of non-educational items in its gift shop and its exhibit and sale of art in, and the occasional rental of, the meeting areas do not reflect, on the facts before us, that, for tax year 2005, TBG used this property for non-botanical garden purposes.

*C. Not Used or Held for Profit*

¶ 16 Although we have concluded, on the record presented, that TBG was using the gift shop and meeting areas for purposes of a botanical garden, TBG was also required to show this property was "not used or held for profit" to claim the exemption allowed by A.R.S. § 42–11116. *See Univ. Physicians*, 206 Ariz. at 67, ¶ 22, 75 P.3d at 157 ("presumption is against the existence of any exemption" (quoting *Hillman v. Flagstaff Cmty Hosp.*, 123 Ariz. 124, 125–26, 598 P.2d 102, 103–04 (1979))). Neither the Arizona constitution nor the statute defines "not used or held for profit." In 1997, however, the Arizona Legislature enacted A.R.S. § 42–11154 (2006) to provide a method for determining an organization's nonprofit status and how the "not used or held for profit" property requirement may be met under the exemption article of the tax statutes, and thus, A.R.S. § 42–11116.

¶ 17 Section 42–11154 reads as follows:

1. Nonprofit organization status may be established by a letter of determination issued in the organization's name by the United States internal revenue service or the department of revenue recognizing the organization's tax exempt status under § 501(c)(3) of the internal revenue code or under § 43–1201.

2. The requirement that property is not used or held for profit may be met by a letter of determination described in paragraph 1 of this section and issued in the name of the organization holding title to

---

**3.** In 1975, the Legislature enacted what became A.R.S. § 42–11155. 1975 Ariz. Sess. Laws, ch. 170, § 1 (1st Reg.Sess.). As originally enacted, this provision read as follows: "The exceptions contained in this section relating to charitable institutions do not apply to property owned by charitable institutions but primarily held or used by others whose use is not excepted from taxation by this section."

the property and for each organization using the property.

¶ 18 In *Volunteer Center of Southern Arizona v. Staples,* 214 Ariz. 36, 147 P.3d 1052 (App.2006), this court applied A.R.S. § 42–11154 to a tax exemption that was inapplicable if the property was "used or held for profit." There, the taxpayer was a non-profit corporation that owned an office building. *Id.* at 36, ¶ 2, 147 P.3d at 1052. It used approximately two-thirds of the building for its own charitable activities and leased the remaining one-third to another non-profit corporation. *Id.* The court rejected the county's argument that, by leasing a portion of its property to the non-profit lessee, the taxpayer was using or holding the property for profit. *Id.* at 37, ¶¶ 5–7, 147 P.3d at 1053. The court explained that, in enacting A.R.S. § 42–11154, the Legislature had "unambiguously instruct[ed] us to determine whether property is used or held for profit by referring to the official federal tax status of the organization owning and using the property—not the nature of the specific financial transactions conducted on the property." *Id.* at 38, ¶ 7, 147 P.3d at 1054. The court went on to state:

> We conclude that, in promulgating § 42–11154, the legislature intended to provide a simple, bright-line rule, anchored in the ultimate function of the organizations owning or using property, for determining whether the property is being 'used or held for profit.'

*Id.* at 39, ¶ 12, 147 P.3d at 1055. The court, thus, concluded the taxpayer was entitled to the exemption on the entire building even though it was leasing a portion of the property to another tax-exempt organization.

¶ 19 Here, TBG is both the sole owner and only user of the gift shop. Under this court's interpretation of A.R.S. § 42–11154 in *Volunteer Center,* the gift shop was exempt from taxation under A.R.S. § 42–11116.

¶ 20 Although TBG was the sole owner of the meeting areas, it was not the only user of that property. Thus, as the County points out, *Volunteer Center's* construction and application of A.R.S. § 42–11154 does not directly control our analysis of whether TBG's meeting areas constituted property being used or held for profit. But § 42–11155 sheds light on how A.R.S. § 42–11154 should be construed and applied. *See Ariz. Dep't of Revenue v. Maricopa County,* 120 Ariz. 533, 535, 587 P.2d 252, 254 (1978) ("tax statutes relating to the same subject should be read together and construed as a whole"). When, as here, a non-profit organization owns and is the primary user of its property but allows occasional use of the property for non-exempt purposes, the property is not transformed into property "primarily held or used by others." Instead, the non-profit organization is the "organization using the property" under A.R.S. § 42–11154(2). In that situation, the non-profit organization owner need only show its non-profit status under A.R.S. § 42–11154(2) to prove its property is "not used or held for profit." If A.R.S. § 42–11154(2) is applicable, and the non-profit organization owner complies with all other requirements imposed by the particular tax exemption statute, its use of its property to generate revenue will not convert its property into property "used or held for profit." *See Volunteer Center,* 214 Ariz. at 38, ¶ 7, 147 P.3d at 1054.

¶ 21 In this case, TBG owned the meeting areas and was the primary user of that space. Because its non-profit status was never in question, the meeting areas constituted property "not used or held for profit" under A.R.S. § 42–11154(2).

*D. Summary Judgment*

¶ 22 Finally, the County argues summary judgment was inappropriate with respect to the meeting areas because it raised a triable issue of fact as to whether the meeting areas were "primarily used" by TBG for its staff and committee meetings. The County contends it demonstrated this issue of fact through its submission of an affidavit from a supervisor in the exemption section of the Office of the Pima County Assessor. In the affidavit, the supervisor noted TBG's own website reflected TBG had exhibited art in the "gallery," the County's term for the meeting areas, almost continuously from September 2005 through December 2005. The County also pointed out TBG had presented

no evidence that any of the art exhibitors possessed tax exemption letters from either the IRS or the State. We see no triable issue of fact based on this affidavit evidence.

¶ 23 Although the laws exempting property from taxation require the taxpayer to rebut the presumption against exemption, once "evidence contradicting the presumption is received, the presumption disappears and the trial court is bound to follow the usual rules of evidence in reaching the ultimate conclusion of fact." *State Tax Comm'n v. Graybar Elec. Co.*, 86 Ariz. 253, 258, 344 P.2d 1008, 1012 (1959). Because TBG presented evidence that the meeting areas were used primarily for its charitable and educational purposes, the burden of proof shifted to the County to present evidence controverting TBG's assertions. Instead, the County merely offered evidence that TBG had exhibited art in the meeting areas. The County presented no evidence controverting TBG's evidence that the meeting areas were "primarily" being used for TBG's charitable and educational purposes. On the record presented to it, the superior court properly granted summary judgment to TBG.

## CONCLUSION

¶ 24 We affirm the tax court's grant of summary judgment to TBG. For tax year 2005, the exemption authorized by A.R.S. § 42–11116 applied to TBG's gift shop and meeting areas. Additionally, pursuant to its request, and subject to its compliance with Arizona Rule of Civil Appellate Procedure 21(c), TBG is entitled to an award of its costs and reasonable attorneys' fees pursuant to A.R.S. § 12–348(B)(1) (2003).

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and MICHAEL J. BROWN, Judge.

