209 P.3d 141

**PRINCE & PRINCESS ENTERPRISES, LLC, dba Magnums Cigar, Wine & Liquor Emporium, Plaintiff/Appellant,**

v.

**STATE of Arizona ex rel. ARIZONA DEPARTMENT OF HEALTH SERVICES, Defendant/Appellee.**

No. 1 CA–CV 08–0151 A.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 30, 2008.

As Amended May 15, 2009.

Review Denied March 17, 2009.

---

6

Jaburg & Wilk, P.C. By Kraig J. Marton, David N. Farren, Phoenix, Attorneys for Plaintiff/Appellant.

Stinson Morrison Hecker LLP By Michael L. Parrish, John T. White, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 In this appeal we interpret an exception to the Smoke–Free Arizona Act, Arizona Revised Statutes ("A.R.S") section 36–601.01 (Supp.2007). We hold that a business which satisfies the definition of a "retail tobacco store" under § 36–601.01(A)(10) qualifies for the statutory retail tobacco store exception to the smoking ban, even if the store also holds a liquor license and sells alcohol on its premises.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Appellant Prince and Princess Enterprises, LLC ("Magnum's") is the owner and operator of Magnum's Cigar, Wine & Liquor Emporium. Magnum's has a tobacco distributor license, which permits it to sell tobacco products and accessories. Magnum's also holds a series 6 alcoholic-beverages license, which permits Magnum's to sell alcohol to its customers for consumption both on and off premises. Magnum's allows smoking on its premises, including in a lounge area where it serves alcoholic beverages.

¶ 3 In the November 2006 general election, the people of Arizona enacted the Smoke–Free Arizona Act pursuant to Proposition 201, a voter initiative measure. The Act provides, in pertinent part:

> Smoking is prohibited in all public places and places of employment within the state of Arizona, except the following:
>
> . . . .
>
> 3. Retail tobacco stores that are physically separated so that smoke from retail tobacco stores does not infiltrate into areas where smoking is prohibited under the provisions of this section.

A.R.S. § 36–601.01(B)(3). The Act defines a "retail tobacco store" as "a retail store that derives the majority of its sales from tobacco products and accessories." A.R.S. § 36–601.01(A)(10).

¶ 4 In February 2008, Magnum's filed a verified complaint seeking declaratory relief that it qualifies as a "retail tobacco store" for purposes of the Smoke–Free Arizona Act plus injunctive relief precluding the Arizona Department of Health Services ("Department") from enforcing the Act against Magnum's. The trial court decided that Magnum's is a "liquor bar"—not a retail tobacco store within the meaning of the Act—and therefore Magnum's is not exempted from the smoke-free requirements of the Act. Magnum's timely appeals and we have jurisdiction pursuant to A.R.S. § 12–2101(B), (F)(2) (2003).

## ANALYSIS

¶ 5 This appeal presents an issue of statutory interpretation that we review de novo. *City of Phoenix v. Harnish*, 214 Ariz. 158, 161, ¶ 6, 150 P.3d 245, 248 (App.2006). "Our primary purpose is to effectuate the intent of those who framed the provision and, in the case of an [initiative], the intent of the electorate that adopted it." *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). "With only a few exceptions, if the language is clear and unambiguous, we apply it without using other means of statutory construction." *Calik v. Kongable*, 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055, 1057 (1999).

¶ 6 Magnum's argues that it satisfies the retail tobacco store exception "because it is a retail store that derives a majority of [its]

sales revenues from tobacco products and accessories," notwithstanding the fact that it also sells alcohol. The Department argues that, since Magnum's has a bar license, it is "therefore a bar and must comply with the Act's indoor-smoking ban that applies to all bars." For the reasons that follow, we agree with Magnum's.

¶ 7 The Smoke–Free Arizona Act precludes smoking in all "public places" and "places of employment," with seven exceptions. The Act defines "public places" as:

> any enclosed area to which the public is invited or in which the public is permitted, including airports, banks, bars, common areas of apartment buildings, condominiums or other multifamily housing facilities, educational facilities, entertainment facilities or venues, health care facilities, hotel and motel common areas, laundromats, public transportation facilities, reception areas, restaurants, retail food production and marketing establishments, retail service establishments, retail stores, shopping malls, sports facilities, theaters, and waiting rooms. A private residence is not a "public place" unless it is used as a child care, adult day care, or health care facility.

A.R.S. § 36–601.01(A)(9) (emphasis added). As a retail store that sells tobacco and alcohol, Magnum's is obviously a "public place" and a "place of employment." Unless Magnum's fits within one of the seven specified exceptions in the Act, smoking is not permitted on its premises.

¶ 8 To qualify for the retail tobacco store exception to the smoking ban, a business must: (1) be a retail store that derives the majority of its sales from tobacco products and accessories, and (2) be physically separated so that smoke does not infiltrate into areas where smoking is prohibited. A.R.S. § 36–601.01(A)(10), (B)(3). Magnum's alleged in its verified complaint that it satisfies these two requirements, and for purposes of the statutory interpretation needed to resolve this appeal, these facts are assumed to be true. The fundamental question raised is whether the business is precluded from claiming the retail tobacco store exception because it also holds a series 6 liquor license

and sells alcohol for consumption on and off its premises.

¶ 9 Based upon a plain reading of the statute and the assumed facts, we conclude that Magnum's qualifies for the retail tobacco store exception. First, Magnum's is a retail store. "If the legislature has not defined a word or phrase in a statute, we will consider respected dictionary definitions." *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 85, ¶ 22, 118 P.3d 29, 33 (App.2005). "Retail" is defined as "the sale of goods to the public in relatively small quantities for use or consumption rather than for resale." THE NEW OXFORD AMERICAN DICTIONARY 1445 (2d ed.2005); *see also* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1109 (1970) (defining "retail" as "[t]he sale of commodities in small quantities to the consumer"); BLACK'S LAW DICTIONARY 1317 (7th ed.1999) (defining "retail" as "[t]he sale of goods or commodities to ultimate consumers"). "Store" is defined as "a retail establishment selling items to the public." THE NEW OXFORD AMERICAN DICTIONARY at 1671. Magnum's is a retail establishment: it sells to the public various tobacco products, tobacco accessories, and alcohol for use or consumption. Under the assumed facts, Magnum's derives the majority of its sales from tobacco and tobacco accessories. It therefore fits squarely within the statutory definition of a "retail tobacco store."

¶ 10 There is no prohibition against the sale of alcohol in either the retail tobacco store exception, § 36–601.01(B)(3), or the definition of "retail tobacco store," § 36–601.01(A)(10). Nothing in the statute, in our view, supports the Department's argument that a retail store which otherwise qualifies under § 36–601.01(B)(3) is precluded from the exception merely because the store also sells alcohol. By applying the language of the Act, as written, to the facts of this dispute, our task is completed. If the assumed facts are proven, Magnum's will qualify for the exception to the smoking ban. No further statutory interpretation is necessary. *See City of Mesa v. Killingsworth*, 96 Ariz. 290, 294, 394 P.2d 410, 412 (1964) (if the language of a statute "is plain and unambiguous and conveys a clear and definite mean-

ing, there is no occasion for resorting to the rules of statutory interpretation").

¶ 11 The Department argues that Magnum's is a bar and the retail tobacco store exception does not apply to bars. This argument avoids the plain language of the Act. The fact that Magnum's holds a section 6 liquor license is not determinative of whether it qualifies for the retail tobacco store exception. In addition to holding a liquor license, Magnum's also holds a tobacco distributor's license. On the basis of licensing alone, we see no reason to label Magnum's as a bar instead of a retail tobacco store. In common parlance, we believe Magnum's is both a retail tobacco store and a bar. But regardless of which label or labels might be attached to Magnum's business, the majority of Magnum's sales are from tobacco products and accessories—the very definition of a "retail tobacco store." Although the Act specifies that the majority of a retail tobacco store's sales must be from tobacco products and accessories, it places no restrictions on the source of the other 49.9 percent of sales. The language of the Act provides no reason to conclude that the other 49.9 percent cannot be generated by alcohol, food, or any other lawfully sold items.

¶ 12 The Department further contends that the "retail tobacco store" exception is only an exception to "retail stores" as found in § 36–601.01(A)(9). Because the definition of "retail tobacco store" includes the phrase "retail store"—but not "business" or "public place" or "bar"—the Department argues that the voters intended the retail tobacco store exception to only apply to retail stores and not other public places within the meaning of § 36–601.01(A)(9). Because Magnum's may be considered a "bar" for some purposes and "bars" are listed as public places subject to the smoking ban, the Department concludes that Magnum's is subject to the smoking ban. This argument overlooks the structure of the Act and incorrectly assumes that the illustrative examples of "public places" are mutually exclusive to one another.

¶ 13 The Act bans smoking in all public places and places of employment, A.R.S. § 36–601.01(B), with seven exceptions, one of which is for "retail tobacco stores." A.R.S.

§ 36–601.01(B)(3). The language and structure of the Act make it plain that this exception is an exception to the statewide ban on smoking in all public places and places of employment. The Act defines "public place" as "any enclosed area to which the public is invited or in which the public is permitted." A.R.S. § 36–601.01(A)(9). The Act then lists typical examples of "public places." The items listed are illustrative examples, as indicated by the use of the word "including" preceding the list. *See State v. Roque*, 213 Ariz. 193, 207, ¶ 31, 141 P.3d 368, 382 (2006) ("Typically, the word 'including' is 'not one of all-embracing definition, but connotes simply an illustrative application of the general principle.'") (citation omitted); *see also Wang v. Wen–Ning Lee*, 256 S.W.3d 862, 868 (Tex. App.2008) ("The word 'including' suggests an illustrative list rather than an exclusive one.").

¶ 14 The examples listed in § 36–601.01(A)(9) are not mutually exclusive. For example, "shopping malls" often contain "retail stores," "restaurants," "sports facilities," "bars," and "theaters." "[R]estaurants" often sell alcohol and have "bars" within the premises. "[E]ntertainment facilities" can also be "sports facilities" or "theaters." "[A]irports," "banks," "educational facilities," and "health care facilities" commonly have "reception areas" and "waiting rooms." A "retail food production and marketing establishment" may also be a "retail store," "restaurant," or "bar."

¶ 15 The Department's argument, by placing undue emphasis on "retail store," also casts aside the structure of the Act. The cornerstone of the Act provides that "[s]moking is prohibited in all public places and *places of employment*." A.R.S. § 36–601.01(B) (emphasis added). Because the phrase "retail stores" is found only in the illustrative list of "public places" and not in the definition of "places of employment," the Department's argument inappropriately whittles away the retail tobacco store exception. The overarching prohibition against smoking applies equally to public places and places of employment. By its emphasis on the phrase "retail store," the Department would have the retail tobacco store exception

apply to "public places" but not to "places of employment." This is inconsistent with a common-sense reading of the Act. It would be inappropriate for this court to "interpret" into existence a new limitation on the statutory exception for retail tobacco stores. *See State Farm Ins. Co. v. Premier Manufactured Sys., Inc.*, 217 Ariz. 222, 228, ¶ 28, 172 P.3d 410, 416 (2007) ("[W]e are not free to engraft further exceptions into the law simply because we might favor them as a matter of policy."). The fact that Magnum's might be considered to be a "bar" or have a "bar" in its premises does not mean that it cannot also be a "retail tobacco store" if the statutory requirements are satisfied.

## CONCLUSION

¶ 16 The trial court erred by holding that Magnum's was not entitled to the benefit of the retail tobacco store exception to the Smoke–Free Arizona Act because it sells alcohol for consumption on and off the premises. We reverse and remand for further proceedings consistent with this opinion. To avail itself of the retail tobacco store exception, Magnum's must prove on remand (1) that it derives the majority of its sales from tobacco products and accessories and (2) that Magnum's premises are physically separated from other premises so that smoke does not infiltrate into areas where smoking is prohibited. A.R.S. § 36–601.01(A)(10), (B)(3).[1]

¶ 17 Finally, Magnum's has requested an award of attorneys' fees on appeal, based on A.R.S. § 12–348 (2003). We agree with the Department, however, that an award of fees under this statute would be premature at this juncture because Magnum's has not prevailed on the merits. *See 4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 100, ¶ 14, 128 P.3d 215, 217 (2006); *Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 206 Ariz. 1, 8–9, ¶ 29, 75 P.3d 91, 98–99 (2003). Magnum's is, nonetheless, entitled to its taxable costs on

appeal, upon compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: MICHAEL J. BROWN, Presiding Judge.

BARKER, Judge, concurring specially.

¶ 18 I agree this matter needs to be remanded but have a somewhat different analytical framework than that set forth in the majority analysis. My view gives a meaning to the term "retail store" in A.R.S. § 36–601.01(A)(10) that differs from Magnum's and the majority's. It may produce a different result on remand and in future cases decided under this Act.

### A.

¶ 19 Like the majority, I agree that simply because Magnum's has and uses a series 6 liquor license (permitting it to sell liquor for consumption on premises) does not disqualify it from being a "retail tobacco store," to which the exemption under A.R.S. § 36–601.01(B)(3) applies. I also agree that simply because the Act includes the terms "bar" and "restaurant" in a nonexclusive listing of "public place[s]" does not mean that a "bar" may not qualify for the exemption. A.R.S. § 36–601.01(A)(9). The majority and I differ with regard to the construction of the term "retail store" as set forth in the exemption itself. A.R.S. § 36–601.01(A)(10) (" 'Retail tobacco store' means *a retail store* that derives the majority of its sales from tobacco products and accessories.") (emphasis added).

¶ 20 As I understand the majority's analysis, Magnum's may qualify for the exemption because whether or not it is acting as a "bar," Magnum's is still a "retail store." *Supra* ¶¶ 9–10. A "bar" is just a subspecies, per Magnum's and the majority's analysis, of a "retail store." *Supra* ¶ 10. Thus, under that analysis, Magnum's may qualify for the exemption so long as more than fifty percent of its sales are from tobacco products or accessories, whether or not it is a "bar."

---

1. As we understand it, our specially concurring colleague believes there should be an additional factual determination on remand: is Magnum's a "retail store"? We respectfully disagree. *See* discussion *supra* ¶ 9.

¶ 21 I would submit that when the people passed this Act, most of them did not consider a "bar" or a "restaurant" or a "theater," for that matter, to be a "retail store." Thus, if Magnum's is functioning primarily as something other than a "retail store," say a "bar" or a "restaurant" or a "theater," then the exemption would not apply. When the people passed this Act, however, they did not define "retail store."

¶ 22 Merriam–Webster defines a "store" as a "business establishment where usu[ally] diversified goods are kept for retail sale <grocery store>." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1156 (10th ed.2001). "Restaurant" is defined as a "business establishment where meals or refreshments may be purchased." *Id.* at 995. A "bar" is defined as "a counter at which food or esp[ecially] alcoholic beverages are served." *Id.* at 91. From my perspective, the difference between a "retail store" and a "bar," "restaurant," or "theater" is that with the latter three there is an expectation that the goods purchased are primarily intended to be consumed on the premises. With a "retail store," the expectation is that the goods purchased are for consumption off the premises.

¶ 23 The case of *McDonald's Corp. v. Glennon,* 355 So.2d 1023 (La.Ct.App.1978) is an example of a difference between a "retail store" and a "restaurant." At issue in that case was whether a McDonald's qualified as a "store" for purposes of Louisiana's chain store tax. McDonald's argued that "a restaurant is simply not a store either under the generally accepted use of the word or under certain judicial pronouncements." *Id.* at 1025. The court, with one dissenting member, rejected that argument as applied to McDonald's.

¶ 24 The court in *McDonald's* essentially adopted the rationale of Magnum's here. It stated:

In comparing the definitions of store and restaurant, we note that both are business establishments where goods and wares are sold. As we see it, store is a much broader definition and applies to all such retail businesses generally, while restaurant is simply a narrower division and is a store

where only prepared food and refreshments are sold.

*Id.* The court then went on to state, however, that "[w]e would readily concede that the hypothetical reasonable man would probably not associate a restaurant such as Antoine's as being a store, but it too has as its main purpose selling prepared food." *Id.* Antoine's, although apparently known well enough in the New Orleans jurisdiction in which this Louisiana court was sitting for the court to essentially take judicial notice of it, is a "world-renowned" restaurant established in 1840 that has served notables such as General Patton, President Roosevelt, and Pope John Paul II during its history. Antoine's Restaurant, http://www.antoines.com (last visited Sept. 16, 2008).

¶ 25 In construing statutes, we are bound to give terms their ordinary, reasonable usage. *Dowling v. Stapley,* 218 Ariz. 80, 84, ¶ 11, 179 P.3d 960, 964 (App.2008) ("When no statutory definition is provided, we turn to common ordinary definitions of the term at issue."). As the Louisiana court pointed out, a hypothetical reasonable person would not consider a restaurant to be a retail store. I would reject Magnum's argument and follow the customary usage of "retail store" and not include within that term establishments such as bars, restaurants, theaters, airports, banks, healthcare facilities, and other entities specified in the Act, even though such entities sell products or services at retail. Simply put, a "bar" or a "restaurant" is not a "retail store" as we commonly use that term.

¶ 26 Further, even if we consider the term "retail store" to be ambiguous and potentially inclusive of a "bar" or a "restaurant," we are to construe that term in a fashion that is consistent with the primary purpose of the Act. *State v. Gomez,* 212 Ariz. 55, 57, ¶ 11, 127 P.3d 873, 875 (2006) ("Our primary objective in construing statutes adopted by initiative is to give effect to the intent of the electorate."). This interpretative principle played a role in the dissent in *McDonald's.* The dissent took the view that "there is sufficient ambiguity surrounding the applicability of 'store' to a fast-food restaurant that the legislature should have the burden of clarification to include another type of tax-

payer." *Id.* at 1027 (Garsaud, J., dissenting). Here, the clear intent of the Act is to make Arizona "[s]moke free" in "all public places and places of employment" with only limited exceptions specified. A.R.S. § 36–601.01(B). Thus, I would construe any ambiguity in whether a "retail store" in subsection (A)(10) also may mean a "bar" in favor of giving "retail store" the narrower interpretation.

## B.

¶ 27 Having concluded that a "bar" is not a "retail store" for purposes of the Act, I do not accept the Department's conclusion that the presence of a "bar" in what would otherwise be a "retail store" necessarily disqualifies an establishment from being a "retail store." Many business establishments that are undeniably retail stores (Target, Wal-Mart, Bashas', Albertsons) also contain a use which, standing alone, would not be considered a "retail store." For instance, a retail store may have a food court where meals are served. There is no question that, that portion of the store functions as a "restaurant." However, the *primary purpose* of such stores is to provide goods and commodities for sale to customers to use off-site, not to provide a location to sit down, eat breakfast or lunch, and consume food prepared on the premises.

¶ 28 In this regard our recent decision in *Tucson Botanical Gardens, Inc. v. Pima County,* 218 Ariz. 523, 189 P.3d 1096 (App. 2008) is helpful. In that case the issue was whether the Tucson Botanical Gardens, "a qualified non-profit charitable organization, was entitled to this exemption on the portion of its property it used to operate a gift shop, exhibit art for sale, and rent to third parties for ... weddings, private meetings, or parties." *Id.* at ¶ 1, 189 P.3d 1096. The County argued that Tucson Botanical Gardens "lost its right to claim the exemption on the gift shop and meeting areas because it is using this space for non-exempt activities." *Id.* at ¶ 10, 189 P.3d 1096. We disagreed. *Id.* In doing so, we noted that the County had focused on the "incidental" uses and "failed to take into account the primary use" made of the premises. *Id.* We held that "as long as the taxpayer's principal or primary use of its property is for the designated exempt purpose, the taxpayer is entitled to the exemption notwithstanding its occasional or incidental use of its property for other purposes." *Id.*

¶ 29 The principle set forth in *Tucson Botanical Gardens* applies here. So long as the "principal or primary use" of Magnum's premise is as a "retail store," it satisfies that portion of the exemption set forth in subsection (A)(10). It does not matter what the remaining use is (whether a "bar," "restaurant" or otherwise) so long as the use is "occasional or incidental" to the purpose of being a "retail store."

## C.

¶ 30 On the record before us, I agree that a remand is required, as the trial judge determined that Magnum's use of a portion of the premise as a "bar" disqualified it as a "retail tobacco store." That holding was in error. However, the issue of whether the primary purpose of the premise was a "bar" or a "retail store," has not been taken up by the superior court. Thus, the matter must be remanded to consider this issue in addition to the two issues identified by the majority. *Supra* ¶ 16. In order to qualify for the exemption, a determination must be made that Magnum's (or any entity seeking to so qualify) is a *"retail store* that derives the majority of its sales from tobacco products and accessories."  A.R.S. § 36–601.01(A)(10) (emphasis added).