255 P.3d 1020

**Charles LOFTUS, Plaintiff/Appellant,**

**v.**

**ARIZONA STATE UNIVERSITY PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM LOCAL BOARD, Defendant/Appellee.**

**Charles Loftus, Plaintiff/Appellee,**

**v.**

**Arizona State University Public Safety Personnel Retirement System Local Board, Defendant/Appellant.**

**No. 1 CA–CV 10–0393.**

Court of Appeals of Arizona, Division 1, Department D.

May 10, 2011.

Robaina & Kresin PLLC By Thomas T. Griffin, Phoenix, Attorneys for Plaintiff/Appellant/Appellee.

Goering, Roberts, Rubin, Brogna, Enos & Treadwell–Rubin, P.C. By Pamela Treadwell–Rubin and Elizabeth L. Warner, Tucson, Attorneys for Defendant/Appellee/Appellant.

## OPINION

NORRIS, Judge.

¶ 1 This appeal arises out of a ruling by the superior court affirming a decision by the Arizona State University Public Safety Personnel Retirement System Local Board ("Board") that salary received by a full-time ASU police officer, Charles Loftus, for teaching part-time at ASU was not part of his compensation for determining his retirement benefits under the Public Safety Personnel Retirement System ("System"). On appeal, Loftus argues ASU should have included his teaching salary in his System-eligible compensation because ASU was a System employer and he was a System member. We disagree. As we explain below, under the statutory provisions governing System benefits, System-eligible compensation must be generated from a member's regular assignment to hazardous duty. Because Loftus's teaching salary was unrelated to his regular assignment to hazardous duty as a police officer, his teaching salary was not System-eligible compensation.

¶ 2 In its cross-appeal, the Board argues the superior court should have awarded it attorneys' fees under Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003),[1] a statute that authorizes a court to award attorneys' fees to a successful party in a contract action. Assuming without deciding the statute is applicable to Loftus's dispute with the Board, the superior court did not abuse its discretion in refusing to award fees.

## FACTS AND PROCEDURAL BACKGROUND

¶ 3 In 1986, Loftus became a member of the System when he began working full-time with benefits as a police officer for the ASU Police Department. The System is a state-sponsored pension plan that collects and pools funds, paying benefits to those who retire from employment with various participating public safety employers. *See* A.R.S. § 38–841 (2011). Approximately 13 years before Loftus became an ASU police officer, the Arizona Board of Regents, acting for ASU, became a participating employer in the System pursuant to a joinder agreement. Under that agreement, ASU acknowledged it employed "certain employees in the field of public safety who are regularly assigned to hazardous duty," and stated it was "elect[ing] to participate in the [S]ystem on behalf of an eligible group of public safety personnel," namely, campus security officers. A.R.S. § 38–842(28)(d) (2011). As required by statute, Loftus contributed 7.65% of his compensation to the System, which ASU automatically deducted from his paycheck ("pension contribution") and transferred to the System's board of trustees. A.R.S. § 38–843(C)–(D) (2011). As we discuss below, "compensation" is defined as "base salary" plus certain other statutorily described sums. A.R.S. § 38–842(12).

¶ 4 In the fall of 2005, ASU's Department of Criminal Justice and Criminology hired Loftus as a faculty associate to teach certain courses. Loftus's employment as a faculty associate was dependent on sufficient enrollment for each course, other needs of the department, and, as Loftus explained at a hearing before the Board, "a lot of other conditions." Further, ASU designated Loftus's faculty-associate position as a "temporary appointment" that would "not lead to tenure consideration." Loftus taught classes on an as-needed basis pursuant to this arrangement at least through the spring of 2008. In addition to serving as a faculty associate for the Department of Criminal

---

1. Although the Arizona Legislature amended certain statutes cited in this decision after the date of the Board's decision, the revisions are immaterial. Thus, we cite to the current version of these statutes.

Justice and Criminology, Loftus also served as a faculty associate for ASU's East College of Social and Behavioral Sciences department. Because the ASU Police Department considered his teaching position to be "off-duty employment,"[2] it had to approve it—which it did.

¶ 5 ASU initially deducted the pension contribution not only from Loftus's regular salary as a full-time ASU police officer but also from what Loftus subsequently described as his "extra pay" for teaching as a faculty associate. Although ASU paid both salaries in one paycheck, his paycheck distinguished between his regular police officer salary and his teaching salary. In 2007, however, ASU stopped deducting the pension contribution from Loftus's teaching salary and eventually refused his request that it reinstate the deduction. Loftus protested ASU's decision to the Board.[3]

¶ 6 After an evidentiary hearing, the Board decided Loftus's teaching salary was not part of his "base salary" and, thus, was not System-eligible compensation. Loftus sought judicial review in the superior court. The court affirmed the Board's decision but denied its request for attorneys' fees under A.R.S. § 12–341.01. Loftus appealed the superior court's affirmance of the Board's decision, and the Board cross-appealed the court's denial of its fee request. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

### I. Loftus's Appeal

■ ¶ 7 Loftus contends all the salary he received from ASU constituted System-eligible compensation. He argues that because, as an ASU police officer, he was a System-participating employee and ASU was a System-participating employer, he was entitled to aggregate his teaching salary and his police officer salary as System-eligible compensation. As we understand his argument, System-eligible compensation follows the person, not the work; thus, as he phrases his argument on appeal, "all compensation regularly paid to an employee for personal services rendered to a [System] employer must be contributed to the [System]," and the "services [he] rendered to ASU cannot be separated into eligible and non-eligible compensation." In making this argument, Loftus relies on the statutory definition of compensation and, more specifically, the definition of base salary. *See* A.R.S. § 38–842(12).

¶ 8 The Board, relying on the same definitions, makes the opposite argument. It contends System-eligible compensation follows the work, not the person, and thus the type of activity, not the employer, "is the proper source of inquiry." Accordingly, the Board argues Loftus cannot aggregate his salaries and, for Loftus's faculty-associate salary to be System-eligible, that position must separately qualify under the System. Thus, it asserts his System-eligible compensation is comprised of his base salary as a regularly employed police officer and not as a faculty associate.

¶ 9 In our view, both interpretations of the statutory definitions of compensation and base salary are plausible. Thus, we are presented with a question of statutory interpretation, subject to de novo review, *Bilke v. State*, 206 Ariz. 462, 464, ¶ 10, 80 P.3d 269, 271 (2003), and we must apply the principles of statutory construction. *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (statutory text that "allows for more than one rational interpretation" permits a court to "resolve doubt by resorting to statutory interpretation"); *State v. Sweet*, 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985) ("An

---

**2.** At a hearing before the Board, an ASU Police Department representative explained the department defined "off-duty employment" as "any employment outside of [the officers'] regular department police officer duties."

**3.** By statute, "[t]he administration of the [S]ystem and responsibility for making the provisions of the [S]ystem effective for each employer are vested in a local board" of each employer. A.R.S. § 38–847(A) (2011). The legislature has granted local boards the power to discharge numerous duties, including determining the "right of any claimant to a benefit" and deciding "all questions of eligibility and service credits, and determin[ing] the amount, manner and time of payment of any benefits under the [S]ystem." A.R.S. § 38–847(D)(1), (3).

ambiguity in a statute is 'not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined.'" (quoting 73 Am. Jur. 2d *Statutes* § 195 (1974))). The most reliable indication of a statute's meaning is its language, and "when the language is clear and unequivocal, it is determinative of the statute's construction." *State v. Hansen*, 215 Ariz. 287, 289, ¶ 7, 160 P.3d 166, 168 (2007) (citation omitted). But when, as here, there are two plausible interpretations of the statute and the plain language does not unambiguously address the issue presented, we "must read the statute as a whole, and give meaningful operation to all of its provisions," by considering "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991); *see Dietz v. Gen. Elec. Co.*, 169 Ariz. 505, 510, 821 P.2d 166, 171 (1991) (when statute susceptible to more than one construction and legislative intent unascertainable, "we ordinarily interpret the statute in such a way as to achieve the general legislative goals that can be adduced from the body of legislation"). Based on the interrelationship of the statutory definitions and consistent with the legislative purpose and history of the System, we hold Loftus's teaching salary was not System-eligible compensation because it was not earned from his regular assignment to hazardous duty.

¶ 10 As discussed, under the System's governing statutes, each participating employer must deduct, and each member must contribute, the pension contribution from a member's compensation. A.R.S. § 38-843(C). Compensation is a defined term, meaning "base salary, overtime pay, shift differential pay, military differential wage pay and holiday pay paid to an employee by the employer."[4] A.R.S. § 38-842(12).

Within the definition of compensation, "base salary" is defined as "the amount of compensation each employee is regularly paid for personal services rendered to an employer before the addition of any extra monies, including overtime pay, shift differential pay, holiday pay, longevity pay, fringe benefit pay and similar extra payments." *Id.* Thus, base salary is not simply an amount of money, but is a function of two concepts: (1) employee status ("the amount of compensation each employee is regularly paid") and (2) the nature of the work performed by the employee for the employer ("for personal services rendered to an employer"). *See id.* As we explain, these concepts require the base salary to originate from regular assignment to hazardous duty.

¶ 11 The two concepts inherent in the definition of base salary arise out of several specific statutory definitions, which, consistent with the legislative purpose and intent, *see infra* ¶¶ 17–18, center on the regular assignment to hazardous duty. An employee is "any person who is employed by a participating employer and who is a member of an eligible group but does not include any persons compensated on a contractual or fee basis." A.R.S. § 38-842(27). In turn, a "[m]ember" is a "full-time employee" who, as relevant here, is (1) "included in a group designated as eligible employees under a joinder agreement entered into by their employer," (2) "regularly assigned to hazardous duty," (3) "receiving compensation for personal services rendered to an employer," and (4) "customar[il]y employ[ed] at least forty hours per week." A.R.S. § 38-842(31)(a)-(c). A System employer includes "any political subdivision of this state ... that has elected to participate in the [S]ystem on behalf of an eligible group of public safety personnel." A.R.S. § 38-842(28)(d).

¶ 12 As noted above and consistent with the statutory requirements, on July 1, 1973, ASU elected to participate as an employer in the System on behalf of campus security

---

**4.** Excluded from compensation are payments for "unused sick leave, payment[s] in lieu of vacation, payment[s] for compensatory time or payment[s] for any fringe benefits." A.R.S. § 38-842(12). With certain exceptions, also excluded are "payments made directly or indirectly by the employer to the employee for work performed for a third party on a contracted basis or any other type of agreement under which the third party pays or reimburses the employer for the work performed by the employee for that third party." *Id.*

officers. *See id.* The statutory definition of "[e]ligible groups," which includes "[p]olice officers who are certified peace officers and who are appointed by the Arizona board of regents," A.R.S. § 38–842(24)(i), is consistent with ASU's designation in its joinder agreement of the employees who would become participants in the System. *See supra* ¶ 3. In addition, as a prerequisite to inclusion within an eligible group, the officers must be "regularly assigned to hazardous duty." A.R.S. § 38–842(24).

¶ 13 Reading these definitions and requirements as a whole, *Wyatt,* 167 Ariz. at 284, 806 P.2d at 873, the definition of base salary in A.R.S. § 38–842(12) ("the amount of compensation each employee is regularly paid for personal services rendered to an employer") is tied to the employee's regular assignment to hazardous duty—a member is a full-time employee who receives compensation for the personal services he or she renders when "regularly assigned to hazardous duty." Thus, the requirement to be "regularly assigned to hazardous duty" conditions both who can be included in one of the "[e]ligible groups" and whether an employee qualifies as a "member." A.R.S. § 38–842(24), (27).

¶ 14 Regular assignment to hazardous duty is another defined term and its definition does not include (nor does Loftus argue it should include) faculty-associate work. A person is "[r]egularly assigned to hazardous duty" when he or she is "regularly assigned to duties of the type normally expected of . . . police officers who are appointed by the Arizona board of regents," not when they are "assigned solely to support duties" or other non-hazardous duty positions. A.R.S. § 38–842(40). In determining who is regularly assigned to hazardous duty, the statute expressly requires the local board to review a person's actual duties, not just the job title, on a case-by-case basis. A.R.S. § 38–842(40). This review mechanism envisions that a person may not be eligible to participate in the System if his or her job duties change from being regularly assigned to hazardous duty to being assigned solely to support duties or other non-hazardous duties. Thus, the obligation to make and deduct the pension contribution can change depending on the nature of the member's duties.

¶ 15 Again, putting these statutory provisions together as we must, *Wyatt,* 167 Ariz. at 284, 806 P.2d at 873, Loftus was obligated to make, and ASU was required to deduct, the pension contribution from the compensation Loftus was "regularly paid for personal services rendered" to ASU when he was "regularly assigned to hazardous duty." *See* A.R.S. § 38–842(12), (24), (40). Only the salary regularly paid for personal services rendered to the employer in that specific capacity qualifies as System-eligible compensation. As the superior court explained in ruling in favor of the Board, eligibility for inclusion in the System "turns on the nature of the services for which the person is being compensated."

¶ 16 Accordingly, we disagree with Loftus and our dissenting colleague that Loftus can aggregate as System-eligible compensation his two separate ASU salaries from his two separate ASU jobs. The System is funded, at least in part, by salaries received by members for a certain type of statutorily defined work. As a part-time faculty associate, Loftus was not regularly assigned to hazardous duty and, thus, was not a member of an eligible group,[5] but, as an ASU police officer, Loftus was regularly assigned to hazardous duty and was a member of an eligible group. Although Loftus received all of his salary from ASU, he was working in two separate capacities—one that paid him System-eligible compensation and one that did not. Therefore, for base salary to be included in System-eligible compensation, we hold it must be generated from work in which the employee is regularly assigned to hazardous duty. Because Loftus was not regularly assigned to hazardous duty when working as a faculty associate, his teaching salary was not System-eligible compensation.

¶ 17 Our conclusion that Loftus's teaching salary was not System-eligible compensation is consistent with the System's legislative

---

**5.** Faculty members are not within one of the enumerated "[e]ligible groups." A.R.S. § 38–842(24).

purpose, legislative history, and our case law. The purpose of the System—"to provide a uniform, consistent and equitable statewide program for public safety personnel who are regularly assigned hazardous duty in the employ of the state of Arizona or a political subdivision thereof"—emphasizes the System was created to benefit public safety personnel who are regularly assigned to hazardous duty. A.R.S. § 38–841(B).

¶ 18 The legislative history reflects the legislature established the System to provide retirement benefits calculated from compensation for a particular type of work—regular assignment to hazardous duty. When the statute was first enacted, the legislature defined "employee" as a "member of a group of public safety personnel *regularly assigned to hazardous duty.*" 1968 Ariz. Sess. Laws, ch. 85, § 1 (2d Reg. Sess.) (emphasis added). In 1980, the legislature added a definition for "[e]ligible groups,"[6] emphasizing that every person included in an eligible group had to be regularly assigned to hazardous duty. 1980 Ariz. Sess. Laws, ch. 146, § 1 (2d Reg. Sess.). Over time the legislature has attempted to define with greater precision not only who could be members but also that compensation for only qualified personal services is System-eligible.[7]

¶ 19 Our construction of the statutory scheme is also consistent with our case law even though no case directly controls this issue. We have held that regular assignment to hazardous duty is an eligibility criterion for System membership. *Fund Manager, Pub. Safety Pers. Ret. Sys. v. Pima Cnty. Sheriff Pub. Safety Pers. Ret. Sys. Bd.*, 145 Ariz. 47, 51, 699 P.2d 921, 925 (App.1985). Even though sworn as a deputy, when an employee's duties consisted solely of cooking at the county jail, the employee was not "regularly assigned to hazardous duty" and thus her compensation was not System-eligible. *Id.* This court has also held that for university security guards' compensation to be System-eligible, the local board must find the guards are "regularly assigned to hazardous duty" and qualify as one of the "[e]ligible groups" enumerated for membership. *Ariz. Bd. of Regents v. State ex rel. State of Ariz. Pub. Safety Ret. Fund Manager Adm'r,* 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989). Thus, our case law[8] further demonstrates the statutory definitions must be read together and in context, *see Wyatt,* 167 Ariz. at 284, 806 P.2d at 873, to determine whether compensation is System-eligible, emphasizing that the employee must be "regularly assigned to hazardous duty."

¶ 20 In sum, reading the statute as a whole and in light of the legislative purpose and history of the System and our case law, when, as here, the employee is performing personal services for a System employer unrelated to his or her regular assignment to hazardous duty, the salary received by the employee for those services does not constitute System-eligible compensation. Thus, we agree with the superior court and the Board that Loftus's teaching salary does not qualify as System-eligible compensation for the pension contribution.

## II. The Board's Appeal

■ ¶ 21 The Board argues the superior court should have awarded it attorneys' fees under A.R.S. § 12–341.01 because, pursuant to Article 29, Section 1(C), of the Arizona

---

6. The legislature defined "[e]ligible groups" as "only municipal police officers, municipal fire fighters, state highway patrol officers, county sheriffs and deputies, fish and game wardens, penitentiary guards and college campus police officers, *all of whom are regularly assigned to hazardous duty.*" 1980 Ariz. Sess. Laws, ch. 146, § 1 (2d Reg. Sess.) (emphasis added).

7. In 1983, the legislature revised the definition of compensation, adding more detail and listing payments to be excluded from the definition, and also defined the term "regularly assigned to hazardous duty" (which is the same as the current statute). 1983 Ariz. Sess. Laws, ch. 300, § 4 (1st Reg. Sess.). In 2006, the legislature added the "base salary" definition to the compensation definition and, in 2009, added a sentence excluding from compensation payment for work for a third party. 2006 Ariz. Sess. Laws, ch. 264, § 6 (2d Reg. Sess.); 2009 Ariz. Sess. Laws, ch. 6, § 15 (3d Spec. Sess.).

8. Attorney general opinions construing this statutory scheme comport with our case law. *See, e.g.,* Op. Ariz. Att'y Gen. I79–228 ("a person must, among other things, be regularly assigned to hazardous duty in order to be an 'employee' ").

Constitution,[9] the matter "arises out of contract." The superior court denied the Board fees without explanation. Under A.R.S. § 12–341.01, the court has discretion to award reasonable attorneys' fees to the successful party in a "contested action arising out of a contract." Assuming without deciding this action arises out of a contract, we hold the superior court did not abuse its discretion in denying the Board's fee request. The issue Loftus raised was one of first impression, his claim was not without merit, and an award of attorneys' fees in this case could discourage other System members from litigating legitimate claims. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985).

## CONCLUSION

¶ 22 For the foregoing reasons, we affirm the superior court's affirmance of the Board's decision and its denial of the Board's request for attorneys' fees. We grant the Board, however, its costs on appeal contingent on its timely compliance with Arizona Rule of Civil Appellate Procedure 21. *See* A.R.S. § 12–342 (2003).

CONCURRING: PATRICIA A. OROZCO, Judge.

GEMMILL, Judge, concurring in part and dissenting in part.

¶ 23 I concur with my colleagues in affirming the trial court's denial of the Board's request for attorneys' fees.

¶ 24 I respectfully dissent from my colleagues' decision that Loftus's teaching income from ASU should not be included in his System-eligible compensation. I conclude that Loftus's total compensation from ASU is required under A.R.S. § 38–843(C) to be included in computing his System retirement benefits.

¶ 25 As a full-time ASU police officer, Loftus is "regularly assigned to hazardous duty" and is a "member" of the System. *See* A.R.S. § 38–842(24)(i) (defining eligible groups to mean certain peace officers and

fire fighters who are "regularly assigned to hazardous duty," including police officers appointed by the Arizona Board of Regents); A.R.S. § 38–842(31)(a) (defining "member" as including an employee "in a group designated as eligible employees under a joinder agreement entered into by their employer ... and who is or was regularly assigned to hazardous duty"). In 1973, the Arizona Board of Regents, for and on behalf of ASU, entered into a joinder agreement with the System to establish ASU as a participating employer and allow full-time ASU police officers to be members of the System.

¶ 26 Section 38–843(C) requires that every member of the System contribute a specific percentage of his "compensation" from the participating employer to the System:

> *Each member*, throughout the member's period of service from the member's effective date of participation, *shall contribute to the fund* an amount equal to 7.65 per cent of the member's *compensation*.

(Emphasis added.) The term "compensation" is defined, "for the purpose of computing retirement benefits," as including "base salary." A.R.S. § 38–842(12). "Base salary" is defined as "the amount of compensation each employee is *regularly paid for personal services rendered to an employer.*" *Id.* (emphasis added). Although a "member" of the System must have a full-time job in which he is "regularly assigned to hazardous duty," the statutory definition of "base salary" is not limited to income from specific tasks or jobs that are hazardous. In my view, we should not add to "base salary" a limitation that is not stated in the statutes.

¶ 27 The income Loftus receives from his part-time teaching position at ASU is "compensation" under A.R.S. § 38–842(12) because it is "regularly paid" to him "for personal services" rendered to ASU. *Id.* "Regularly paid" is not defined in the pertinent statutes. When a word or phrase in a statute is undefined, we must give the words their ordinary meanings, unless the context clearly indicates that a special

---

**9.** Section 1(C) states: "Membership in a public retirement system is a contractual relationship that is subject to article II, § 25, and public retirement system benefits shall not be diminished or impaired."

meaning was intended. A.R.S. § 1–213 (2002); *Trustmark Ins. Co. v. Bank One, Ariz., NA,* 202 Ariz. 535, 541, ¶ 27, 48 P.3d 485, 491 (App.2002). The phrase "regularly paid" in this statute means payments made consistently, frequently, and at uniform intervals.[10] Loftus received compensation for both his full-time police officer position and his part-time teaching position in the same checks at the same semimonthly payroll intervals. The fact that his full-time position was year round and his part-time position existed for periods of several months at a time does not mean that his income from both was not "regularly paid" at consistent, frequent, and uniform intervals. Additionally, Loftus's teaching constituted "personal services" and his participating public safety employer was the Arizona Board of Regents, for and on behalf of ASU, not simply the ASU police department. His income from teaching was therefore part of his "compensation" from his participating employer.

¶ 28 Because his income from his services as a police officer and his services as a teacher constitute his compensation from ASU, A.R.S. § 38–843(C) requires that he contribute a specified portion of his total compensation to the System. No choice is permitted here. These statutes do not provide an exception for compensation earned by a System member for additional personal services rendered to the System employer in a "second job."

¶ 29 If Loftus was working as a part-time teacher for ASU and not also working as a full-time police officer for ASU, his teaching income would not qualify for participation in the System. Similarly, if he was teaching at Phoenix College or some other educational institution instead of ASU, his teaching income would not qualify for the System. Based solely on his capacity as a teacher, he is not "regularly assigned to hazardous duty." But because he is a full-time peace officer with the ASU police department, he is "regularly assigned to hazardous duty" even though he is actually performing the hazardous duty only when on the job as a police officer. When he is teaching at ASU or sleeping at home or otherwise "off duty," he may not be engaging in hazardous duty but he remains at all times "regularly assigned to hazardous duty."

¶ 30 The Board has argued, and my colleagues in the majority opinion have concluded, that the legislature probably did not intend that income from Loftus's "second job" for ASU be included in his System compensation. Their analysis of the legislative intent may be correct. But it is the statutory language the legislature enacted that should control here, not what we may think they intended or meant to enact. *See New Sun Bus. Park, LLC v. Yuma County,* 221 Ariz. 43, 46, ¶ 12, 209 P.3d 179, 182 (App.2009) (the plain language of statutes is "the most reliable indicator" of their meaning). When the plain meaning and application of statutes can be ascertained from the statutory language, we must apply that meaning instead of resorting to analysis of legislative intent. *See New Sun,* 221 Ariz. at 47, ¶ 16, 209 P.3d at 183 ("[W]e are 'not at liberty to rewrite statutes under the guise of judicial interpretation.'") (quoting *State v. Patchin,* 125 Ariz. 501, 502, 610 P.2d 1062, 1063 (App.1980)); *Prince & Princess Enters., LLC v. State ex rel. Ariz. Dep't of Health Servs.,* 221 Ariz. 5, 6, ¶ 5, 209 P.3d 141, 142 (App.2008) (there is usually no occasion for resorting to statutory interpretation when the language is clear and unambiguous). I respectfully disagree with my colleagues in the majority when they conclude that these statutes are ambiguous. *See supra* ¶ 9. My conclusion is that these statutes are clear and must be applied straightforwardly to the facts of this situation. Upon doing so, Loftus's compensation "for the purpose of computing retirement

---

10. In determining the ordinary meaning, we will consider respected dictionary definitions. *Urias v. PCS Health Sys., Inc.,* 211 Ariz. 81, 85, ¶ 22, 118 P.3d 29, 33 (App.2005). *See* Merriam–Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/regularly (last visited April 7, 2011) (defining "regularly" as "in a regular manner" or "on a regular basis" or "at regular intervals"); *see generally* The New Oxford American Dictionary 1427 (2d ed. 2005) (defining "regular" as "recurring at short uniform intervals" and "done or happening frequently"); *see also* Black's Law Dictionary 767 (7th ed. 1999) (defining "regular income" as "[i]ncome that is received at fixed or specified intervals").

benefits" includes his total income from ASU. *See* A.R.S. §§ 38–842(12), –843(C). If this result is not what the legislature intended, the appropriate remedy lies with the legislature, not the courts.

¶ 31 For these reasons, I would reverse with appropriate instructions to require Loftus's teaching income from ASU to be included in his System compensation.