226 P.3d 398

**SPECIAL FUND DIVISION, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Michael Sordia, Respondent Employee,**

**McCarthy Building Companies, Respondent Employer,**

**Arch Insurance Co., c/o Gallagher Bassett Ins. Svc., Respondent Insurance Carrier.**

**No. 1 CA–IC 08–0060.**

Court of Appeals of Arizona, Division 1, Department D.

Jan. 21, 2010.

Reconsideration Denied Feb. 9, 2010.

Review Denied May 20, 2010.

---

The Industrial Commission of Arizona, Special Fund Division by Rachel C. Morgan, Suzanne S. Marwil, Phoenix, Attorney for Petitioner.

Andrew F. Wade, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Taylor & Associates, PLLC by Stephen L. Weiss, Phoenix, Attorneys for Respondent Employee.

Jardine, Baker, Hickman & Houston, PLLC by Stephen C. Baker, Phoenix, Attorneys for Respondents Employer and Carrier.

**OPINION**

GEMMILL, Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for loss of earning capacity and reimbursement. The question presented is whether the administrative law judge ("ALJ") correctly interpreted Arizona statutes when he awarded reimbursement from petitioner Special Fund Division of the ICA ("Special Fund") to respondent employer McCarthy Building Companies and its workers' compensation insurance carrier, respondent Arch Insurance Company. Reimbursement was awarded because McCarthy knowingly employed a worker with an impairment who then suffered a compensable injury. The statutes at issue are Arizona Revised Statutes ("A.R.S.") sections 23–1065(C) (Supp.2009) and 23–1044(B) (Supp.2009). Because we conclude that respondent employee Michael Sordia's permanent impairment from his industrial accident is not of the type specified in A.R.S. § 23–1044(B), we find the ALJ correctly applied the governing statutes and we affirm the award.

## BACKGROUND

¶ 2 While working for McCarthy Building Companies in April 2004, Sordia was involved in an accident in which his right leg and left arm were broken. Sordia filed a workers' compensation claim, which was accepted for benefits. He received extensive medical, surgical, and psychological treatment for his injuries. It was eventually determined that Sordia had permanent impairments to both his arm and his leg.

¶ 3 The ICA subsequently entered its findings and award for a permanent partial disability. It found Sordia had "sustained 10% permanent impairment of the left upper extremity" and "37% [permanent impairment] of the ... right lower extremity," which together equal "20% permanent impairment of the whole person." Both Sordia and McCarthy protested this award. Sordia sought a greater loss of earning capacity award, and McCarthy sought reimbursement from the Special Fund under A.R.S. 23–1065(C) for disability compensation paid to Sordia. Generally, reimbursement under that statute is available to employers that knowingly employ persons with qualifying impairments who later suffer an industrial injury. *See* A.R.S. § 23–1065(C); *see generally Special Fund Div. v. Indus. Comm'n (Burrell)*, 191 Ariz. 149, 152, ¶¶ 8–9, 953 P.2d 541, 544 (1998) (explaining reimbursement statute designed to promote hiring and continued employment of disabled persons).

¶ 4 The ALJ received testimony from Sordia, three physicians, two psychologists, and several labor market experts. The ALJ then entered an award finding Sordia permanently and totally disabled and awarding McCarthy and its carrier reimbursement (often called "apportionment") from the Special Fund. Regarding reimbursement, the ALJ found that Sordia suffered from a preexisting impairment from Type II diabetes, that this condition predated the April 2004 industrial injury, and that McCarthy was aware of this condition when it employed Sordia.

¶ 5 The Special Fund requested administrative review and disputed the applicability of the apportionment statute. The ALJ summarily affirmed his award. The Special Fund next brought this appeal. This court has jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(2) (2003), 23–951(A) (1995), and Arizona Rule of Procedure for Special Actions 10.

## ANALYSIS

¶ 6 The sole issue raised on appeal is whether the ALJ erred by awarding reimbursement to McCarthy and its carrier under A.R.S. § 23–1065(C) We find no error and conclude that apportionment was properly awarded.

¶ 7 We deferentially review reasonably supported factual findings, but we independently review legal conclusions. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App.2003). Whether McCarthy and its carrier are entitled to reimbursement under A.R.S. § 23–1065(C) is an issue of statutory interpretation that we review de novo. *See New Sun Bus. Park, LLC v. Yuma County*, 221 Ariz. 43, 45, ¶ 4, 209 P.3d 179, 181 (App.2009); *Universal Roofers v. Indus. Comm'n*, 187 Ariz. 620, 622, 931 P.2d 1130, 1132 (App.1996). The primary goal in interpreting a statute is to determine and give effect to the intent of the legislature. *DeVries v. State*, 221 Ariz. 201, 204, ¶ 6, 211 P.3d 1185, 1188 (App.2009).

¶ 8 We first look to the plain language of the statute as the most reliable indicator of its meaning. *New Sun*, 221 Ariz. at 46, ¶ 12, 209 P.3d at 182. If the statutory language is clear and unambiguous, there is usually no occasion for resorting to the rules of statutory interpretation. *Prince & Princess Enters., LLC v. State ex rel. Ariz. Dep't of Health Servs.*, 221 Ariz. 5, 6, ¶ 5, 209 P.3d 141, 142 (App.2008). If we need to apply interpretive principles, our supreme court has explained that, in regard to A.R.S. § 23–1065(C) and other remedial statutes, "we construe remedial statutes liberally to achieve the special purpose underlying the legislation." *Burrell*, 191 Ariz. at 152, ¶ 9, 953 P.2d at 544.

¶ 9 Section 23–1065(C) provides, in pertinent part:

In claims involving an employee who has a preexisting physical impairment which is not industrially-related ... and the em-

ployee thereafter suffers an additional permanent impairment not of the type specified in § 23–1044, subsection B, the claim involving the subsequent impairment is eligible for reimbursement. . . .

If certain conditions are met, the employer or carrier may be reimbursed by the Special Fund for half the compensation paid to the claimant. A.R.S. § 23–1065(C)(4).

¶ 10 The statute was enacted to "promote the hiring of disabled or handicapped workers." *Burrell*, 191 Ariz. at 153, ¶ 10, 953 P.2d at 545. Prior to the enactment of § 23–1065(C), an employer that hired an individual with a preexisting injury who then suffered an industrial injury was required to fully compensate the individual for both the preexisting injury and the permanent physical impairment. *Id.* at 152, ¶ 8, 953 P.2d at 544. Employers therefore had an incentive to avoid employing disabled workers. *Id.* Section 23–1065 was adopted to remedy that situation by ameliorating the employer's burden in such a case. *Id.* at ¶ 9; *see also Special Fund Div. v. Indus. Comm'n*, 182 Ariz. 341, 345, 897 P.2d 643, 647 (App.1994).

¶ 11 Sordia had a preexisting physical impairment resulting from diabetes. The dispute before us is whether Sordia's April 2004 injury was an additional permanent impairment "not of the type specified in [A.R.S.] § 23–1044, subsection B." A.R.S. § 23–1065(C). The ALJ found that his new impairment—the permanent injuries to his arm and leg—was not of the type specified in § 23–1044(B). Accordingly, the ALJ awarded McCarthy reimbursement from the Special Fund in accordance with § 23–1065(C). The Special Fund now challenges the underlying finding and the resulting conclusion.

¶ 12 Section 23–1044(B) provides a fixed schedule of compensation (stating both amount and duration) to claimants who suffer one of the injuries listed in that subsection. The enumerated injuries are referred to as "scheduled injuries" and are conclusively presumed to adversely affect the claimant's earning capacity. *See Arizona Workers' Compensation Handbook* § 7.2.4.1, at 7–4 (Ray J. Davis, et al., eds., 1992 and Supp. 2007) ("*Handbook*"). When a claimant suffers a non-enumerated injury, his award is said to be "unscheduled." *Pullins v. Indus. Comm'n*, 132 Ariz. 292, 294, 645 P.2d 807, 809 (1982). Permanent disability benefits are awarded for an unscheduled injury only after a claimant establishes a loss of earning capacity through an administrative process. *See Handbook* § 7.2.4.2, at 7–4 to –5. An unscheduled award is not limited in duration and will end only when the disability is removed. *Pullins*, 132 Ariz. at 294, 645 P.2d at 809.

¶ 13 Sordia suffered a broken left arm and a broken right leg in the April 2004 accident. The Special Fund argues that because both of these injuries are listed in § 23–1044(B), they are of the type specified and the apportionment statute should therefore not apply.

¶ 14 If viewed individually, Sordia's injury to his leg and his injury to his arm are of the type specified in § 23–1044(B)—an injury to the arm is enumerated at § 23–1044(B)(13) and an injury to the leg at § 23–1044(B)(15). Sordia did not suffer the injuries separately, however, but as part of the same accident. Section 23–1044(B) does not list, as a "scheduled injury," an impairment to one arm and one leg. Except for subsection (B)(19), which describes "permanent and complete loss of hearing in both ears," the listed injuries are all to a single body part. Because Sordia suffered an injury to two body parts—a non-enumerated injury—we conclude that the ALJ did not err in finding Sordia's impairment was not of the type specified in § 23–1044(B).

¶ 15 Our conclusion is supported by the principle that an injury to the whole person often will have a greater overall effect than might be expected simply from the separate injuries. Arizona case law recognizes that two scheduled injuries, when suffered contemporaneously, are beyond the purview of § 23–1044(B). In *Ossic v. Verde Central Mines*, 46 Ariz. 176, 177–78, 49 P.2d 396, 397 (1935), for example, the claimant suffered various injuries during a mining accident, each of which, considered separately, would have been enumerated injuries under the statutory predecessor to § 23–1044(B). In finding the claimant's impairment did not fall

within the ambit of that subsection and that it must therefore be compensated as an unscheduled injury, the court noted "the undoubted fact that the actual loss of earning power occasioned by a combination of two or more separately scheduled injuries may be much greater than the amount reached by merely adding together the losses presumed to be caused by each of such injuries considered separately." *Id.* at 188–89, 49 P.2d at 401–02. The court further observed that, "in compensation cases two plus two does not necessarily equal four, but in some cases may equal six or more." *Id.*

¶ 16 Although *Ossic* arose in a different context, its underlying principle applies here. The effect of two scheduled injuries on a claimant is often greater than the sum of those injuries. *See id.; see also Williams v. Indus. Comm'n*, 73 Ariz. 57, 60–61, 237 P.2d 471, 474 (1951). Accordingly, two injuries—specified in § 23–1044(B) when viewed individually—are not specified when they occur contemporaneously.

¶ 17 *Ossic* pre-dates the amendment of § 23–1065(C) into its current form. We presume the legislature was aware of existing law and court decisions when amending the statute. *See Daou v. Harris*, 139 Ariz. 353, 357, 678 P.2d 934, 938 (1984). We are not aware of any reason to believe that the legislature intended to reject the principles from *Ossic* when it amended § 23–1065(C) to provide the current reimbursement provisions.

¶ 18 The Special Fund cites *Universal Roofers v. Industrial Commission*, 187 Ariz. 620, 931 P.2d 1130 (App.1996), in support of its argument. In that case, the claimant had a preexisting impairment from diabetes and a preexisting back injury. *Id.* at 621, 931 P.2d at 1131. He then suffered an industrial injury to his leg, which was compensated as an unscheduled injury. *Id.* The carrier sought apportionment under § 23–1065(C) on the ground that when a claimant is given an unscheduled award, his injuries are necessarily "not of the type specified in 23–1044(B)." *Id.* at 622, 931 P.2d at 1132.

¶ 19 This court rejected the argument, holding "that the words 'an additional permanent impairment not of the type specified in § 23–1044, subsection B' in section 23–1065(C) refer to the nature of the impairment, not to the nature of the disability compensation." *Id.* Because the injury to the claimant's leg was specified in § 23–1044(B), the court found that apportionment was not available. *Id.*

¶ 20 Our holding is consistent with *Universal Roofers*. In determining reimbursement under A.R.S. § 23–1065(C), the focus is on the additional impairment, not on the nature of the disability compensation. The claimant in *Universal Roofers* suffered an additional permanent impairment to his right leg, an injury clearly specified under § 23–1044(B)(15). In contrast, Sordia suffered a permanent impairment to both his arm and leg from the same accident. As explained above, Sordia's overall injury is not one of the enumerated injuries under § 23–1044(B).

¶ 21 Finally, to the extent the language of A.R.S. § 23–1065(C) may be deemed ambiguous and susceptible of different meanings in this context, we acknowledge and apply the principle enunciated by the Arizona Supreme Court that a remedial statute must be liberally construed to achieve the special purpose underlying the legislation. *Burrell*, 191 Ariz. at 152, ¶ 9, 953 P.2d at 544. Because § 23–1065(C) is intended to promote the hiring of handicapped workers, we decline to adopt a narrow interpretation of the statute. *See id.* The award of reimbursement in this case advances the purpose of the legislation.

## CONCLUSION

¶ 22 For these reasons, the award is affirmed.

CONCURRING: PETER B. SWANN, Presiding Judge, and DIANE M. JOHNSEN, Judge.