IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE
———————————————

SPECIAL FUND DIVISION, *Petitioner Party in Interest*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

LA PALMA CORRECTIONAL CENTER, *Respondent Employer*,

NEW HAMPSHIRE INSURANCE/AIG, *Respondent Carrier,*

STEPHANIE L. LANE, *Respondent Employee*.

No. 1 CA-IC 15-0023
FILED 6-21-2016
———————————————

Special Action - Industrial Commission

ICA Claim No.  20102-940008
Carrier Claim No. 710-722421
J. Matthew Powell, Administrative Law Judge

**AWARD AFFIRMED**
———————————————

COUNSEL

Special Fund Division, Phoenix
By Stephen D. Ball
*Counsel for Petitioner Party in Interest*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Jones, Skelton & Hochuli, PLC, Phoenix
By Gregory L. Folger, Jennifer B. Anderson
*Counsel for Respondents Employer and Carrier*

Snow, Carpio & Weekley, PLC, Phoenix
By Brian A. Weekley
*Counsel for Respondent Employee*

---

## OPINION

Judge John C. Gemmill delivered the opinion of the Court, in which Presiding Judge Andrew W. Gould and Judge Margaret H. Downie joined.

---

**G E M M I L L**, Judge:

¶1 This is an apportionment dispute between respondent employer and carrier (collectively "New Hampshire") and petitioner party in interest, Special Fund Division ("the Special Fund") of the Industrial Commission of Arizona ("ICA"). The Special Fund seeks review of an ICA award and decision upon review granting apportionment.

¶2 Before working for employer La Palma Correctional Center, the respondent employee, Stephanie L. Lane, served in the military for several years, completed a tour of duty in Iraq, and thereafter experienced post-traumatic stress disorder, depression, and anxiety. The issue presented is whether her outpatient treatment at a Veterans Administration clinic in Casa Grande ("VA clinic") for preexisting conditions constituted "treatment in a recognized medical or mental institution" within the meaning of Arizona Revised Statutes ("A.R.S.") section 23-1065(C)(3)(n). Applying standard principles of statutory interpretation, we conclude that the statute includes outpatient treatment and is not limited to inpatient treatment. We therefore affirm the award and decision upon review of the administrative law judge ("ALJ").

### BACKGROUND

¶3 In October 2010, the employee injured her low back while working in La Palma's warehouse. She filed a worker's compensation claim that was accepted for benefits. Her claim was eventually closed with an unscheduled permanent partial impairment. The ICA then entered its

2

findings and award for a 75.79% loss of earning capacity ("LEC") and permanent disability benefits in the amount of $1,104.04 per month.[1]

¶4      The respondent carrier, New Hampshire, protested the ICA's findings and award, and requested apportionment of the employee's permanent disability benefits based on her "significant preexisting psychiatric disabilities from her military service prior to [her] employment."[2] The ALJ entered an order joining the Special Fund as a party.

¶5      A hearing was held to address the issue of apportionment. The employee testified that prior to her industrial injury in 2010, she had received outpatient medical and mental healthcare at the VA clinic. Thereafter, the ALJ entered an award granting apportionment in accordance with A.R.S. § 23-1065(C)(4).  The Special Fund timely requested administrative review, and the ALJ summarily affirmed the award.  The Special Fund now seeks review by this court.  This court has jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## ANALYSIS

¶6      The primary purpose of the apportionment statute, A.R.S. § 23-1065, is to promote the hiring and retention of disabled or handicapped workers. *See Special Fund Div. v. Indus. Comm'n (Sordia)*, 224 Ariz. 29, 32, ¶ 10 (App. 2010).   Before the enactment of the statute, "an employer that hired an individual with a preexisting injury who then suffered an industrial injury was required to fully compensate the individual for both the preexisting injury and the permanent physical impairment." *Id.* Section 23-1065 ameliorates the employer's burden by providing reimbursement from the Special Fund for one-half the amount of compensation for loss of earning capacity or permanent total disability, *see* § 23-1065(C)(4), when an

---

[1]  The ICA makes the initial determination of whether a permanent impairment has resulted in an LEC.  *See* A.R.S. § 23-1047(A).

[2]  The employee also protested the ICA's findings and award.  Both her protest and New Hampshire's protest regarding the amount of the LEC and disability benefits have been resolved and are not before this court.  This apportionment dispute does not impact the employee's permanent disability benefits.  The question is simply whether New Hampshire shoulders the entire burden or shares the burden with the Special Fund.

employer has knowingly employed or retained a person with a qualifying impairment who later suffers an industrial injury, *Sordia*, 224 Ariz. at 31, ¶ 3.

¶7 To obtain apportionment, New Hampshire must establish that the employee's preexisting condition fits within A.R.S. § 23-1065(C)(3)(n):

> C. In claims involving an employee who has a preexisting physical impairment that is not industrially-related and, whether congenital or due to injury or disease, is of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the impairment equals or exceeds a ten per cent permanent impairment evaluated in accordance with the American medical association guides to the evaluation of permanent impairment, and the employee thereafter suffers an additional permanent impairment not of the type specified in § 23-1044, subsection B, the claim involving the subsequent impairment is eligible for reimbursement, as provided by subsection D of this section, under the following conditions:
>
> * * * *
>
> > 3. The employee's preexisting impairment is due to one or more of the following:
> >
> > * * * *
> >
> > > (n) *Psychoneurotic disability following treatment in a recognized medical or mental institution.*

(Emphasis added.)

¶8 The parties agree that all the prerequisites for reimbursement under § 23-1065(C)(3)(n) are satisfied in this situation, with one exception. That is, New Hampshire and the Special Fund disagree only about whether the employee's VA clinic outpatient treatment for her preexisting psychoneurotic condition constitutes "treatment in a recognized medical or mental institution" within the meaning of A.R.S. § 23-1065(C)(3)(n). The

ALJ concluded that the statutory language did not require inpatient treatment.[3]

**¶9** Whether New Hampshire is entitled to reimbursement under A.R.S. § 23–1065(C) is an issue of statutory interpretation that we review de novo. *See Special Fund Div. v. Indus. Comm'n (Karen Lane)*, 232 Ariz. 110, 112, ¶ 10 (App. 2013); *Special Fund Div. (Sordia)*, 224 Ariz. at 31, ¶ 7; *New Sun Bus. Park, LLC v. Yuma County*, 221 Ariz. 43, 45, ¶ 4 (App. 2009). "We first look to the plain language of the statute as the most reliable indicator of its meaning." *Special Fund Div. (Sordia)*, 224 Ariz. at 31, ¶ 8. Statutory language is normally given its ordinary, common meaning unless it appears from the context that a different meaning is intended. *See* A.R.S. § 1-213. "If the language is clear and unambiguous, we give effect to that language and do not employ other methods of statutory construction." *State v. Pledger*, 236 Ariz. 469, 471, ¶ 8 (App. 2015). *See also Prince & Princess Enters., LLC v. State ex rel. Ariz. Dep't of Health Servs.*, 221 Ariz. 5, 6, ¶ 5 (App. 2008).

---

[3] The ALJ explained:

> There is no Arizona case law construing the statutory phrase "treatment in a recognized medical or mental institution." Neither does it appear that any other state with a similar provision has had occasion to interpret the language. However, common sense and established law regarding the purpose of the apportionment statute support the carrier's interpretation. As stated in the carrier's legal memorandum, its "interpretation would more effectively promote the Act's purpose of encouraging employers to hire employees with preexisting psychiatric injuries. The vast majority of psychiatric and mental health patients are treated on an outpatient basis. Limiting apportionment to disabilities following inpatient psychiatric treatment would have the perverse effect of discouraging employers from hiring the very people who are most likely to be productive employees because their less serious conditions allowed for outpatient care." Accordingly, it is concluded that the word "in" in A.R.S. § 23-1065(C)(3)(n) merely pertains to the location where the qualified treatment is provided. Treatment provided inside, within or at a qualified medical or psychiatric institution is sufficient.

¶10    Applying the ordinary and common usage of the words, treatment "in a recognized medical or mental institution" does not convey a requirement of inpatient as opposed to outpatient treatment.  Rather, the language requires only that the employee receive treatment "in" a recognized medical or mental institution.  The VA clinic is such an institution, and this employee received treatment at — and within or "in" — the institution.

¶11    If the legislature had intended to limit this qualifying and preexisting condition to one requiring inpatient treatment in a medical or mental institution, it would have used appropriate words to convey that meaning.  For example, § 23-1065(C)(3)(n) could have been drafted or amended to state "[p]sychoneurotic disability following *inpatient* treatment in a recognized medical or mental institution" or "[p]sychoneurotic disability following *confinement for* treatment in a recognized medical or mental institution."  (Hypothetical additional words italicized.)  *See, e.g.,* Ga. Code Ann. § 34-9-361(13) ("[p]sychoneurotic disability following *confinement for* treatment in a recognized medical or mental institution *for a period in excess of six months*") (emphasis added).  Our legislature, however, did not include these additional words and we will not engage in "judicial legislation."  *See Morgan v. Carillon Investments, Inc.*, 207 Ariz. 547, 552, ¶ 24 (App. 2004), *aff'd*, 210 Ariz. 187 (2005).  "The choice of appropriate statutory language rests with the legislature, and therefore, it is up to the legislature, if it so desires, to amend or clarify the meaning" of § 23-1065(C)(3)(n).  *See Nordstrom, Inc. v. Maricopa Cty.*, 207 Ariz. 553, 557-58, ¶ 15 (App. 2004).

¶12    The Special Fund contends that the language "in a recognized medical or mental institution" should be interpreted to mean "inpatient" treatment at such a facility.  In support of that interpretation, it argues that a "mental institution," as defined by the American Psychological Association's Dictionary of Psychology, is for patients "unable to function . . . as outpatients."  We decline to apply this technical meaning to words that have a discernible ordinary meaning, as here.  And even if the term "mental institution" is usually associated with inpatient treatment, such an institution may also direct and provide outpatient treatment.  Further, the Special Fund's interpretation based on "mental institution" does not address the additional statutory term "medical . . . institution."  This record reveals that the VA clinic is an institution that provides outpatient treatment for both medical and mental or psychological conditions.  *See Obregon v. Indus. Comm'n*, 217 Ariz. 612, 615, ¶ 16 (App. 2008) (explaining that "each word or phrase in a statute must be given meaning so that no part is rendered void, superfluous, contradictory, or insignificant").

¶**13**        The Special Fund also argues for its preferred interpretation on the basis that this preexisting condition is the only one listed in the statute that requires treatment in a "recognized medical or mental institution."  We agree that it is important to compare the language and structure of § 23-1065(C)(3)(n) with the other conditions listed in § 23-1065(C)(3), and we agree with the Special Fund that this particular language is intended to be limiting.  But the conclusion reached from such a comparison does not mandate the Special Fund's interpretation of the statute.  The additional language in subsection (n) requires treatment in a "recognized . . . institution" as opposed to routine psychological counseling in a doctor's office.  Nonetheless, this statutory language is insufficient to limit qualifying preexisting impairments to those for which inpatient treatment was received.

## CONCLUSION

¶**14**        Based on a plain reading of A.R.S. § 23-1065(C)(3)(n), we affirm the award and decision upon review.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA