IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MUKESH NARANG, as Trustee of the Rakesh Malhotra Qualified
Personal Residence Trust; RAKESH MALHOTRA, a single man,
*Plaintiffs/Appellees*,

*v.*

SUDHIR RANJAN, as Trustee of Neera Malhotra Qualified Personal
Residence Trust; NEERA MALHOTRA, a single woman,
*Defendants/Appellants*,

SUDHIR RANJAN, as Trustee of the Malhotra Children's Trust UAD 5-10-
93, *Intervenor/Appellant.*

No. 1 CA-CV 15-0125
FILED 6-23-2016

Appeal from the Superior Court in Maricopa County
No.  CV2013-006427
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Stinson Leonard Street LLP, Phoenix
By Lonnie J. Williams, Jr.
*Counsel for Plaintiffs/Appellees*

Fennemore Craig, P.C., Phoenix
By Alexander R. Arpad
*Counsel for Defendants/Appellants*

---

**OPINION**

---

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Margaret H. Downie joined.

---

**G E M M I L L**, Judge:

¶1        This is an appeal from an order compelling a partition sale of a residence owned by two separate Qualified Personal Residence Trusts ("QPRTs") created by the trustors, Neera Malhotra and Rakesh Malhotra. The trial court held the residence was subject to partition and ordered the sales proceeds be allocated equally between the Neera Malhotra QPRT ("Neera QPRT") and the Rakesh Malhotra QPRT ("Rakesh QPRT"). Neera Malhotra and Sudhir Ranjan, the trustee of the Neera QPRT and the Malhotra Children's Trust UAD 5-10-93 ("Children's Trust") (collectively "Appellants"), appeal the compelled partition.

**BACKGROUND**

¶2        The property at issue is a residence that Rakesh and Neera owned as community property during their marriage. In 2000, while still married, Neera and Rakesh each transferred his or her entire undivided one-half interest in the residence to a trust: Neera transferred her interest to the Neera Malhotra QPRT and Rakesh transferred his interest to the Rakesh Malhotra QPRT.

¶3        A QPRT is an irrevocable trust into which the donor places a personal residence for gift and estate tax purposes. The Neera QPRT terminates in 2030 or upon her death; the Rakesh QPRT terminates in 2020 or upon his death. Other than the durations, the provisions of the QPRTs are identical. Each QPRT names the Children's Trust as the remainder beneficiary upon expiration of the trust's term. Sudhir Ranjan is the trustee of the Neera QPRT, and Mukesh Narang is the trustee of the Rakesh QPRT.[1]

---

[1] Rakesh Malhotra and Mukesh Narang, trustee of the Rakesh Malhotra QPRT, contend that Ranjan, as trustee of the Children's Trust, failed to make an appearance pursuant to Arizona Rule of Civil Procedure 24(d) and, therefore, has no standing in this appeal as an Intervenor. However, the trial court granted Ranjan's motion to intervene as trustee of the Children's

**¶4** Pursuant to the QPRTs, Neera and Rakesh, as trustors, each had the exclusive right to "the use, occupancy and enjoyment of the Residence" rent-free for the term of the trust. The "Residence" is defined as "the real estate described in Schedule A and any substitute personal residence acquired by the Trustee in accordance with the provisions of this Agreement." Schedule A describes this specific home. Each QPRT allows the trustor to sell the Residence and purchase a replacement residence within two years of the sale or the proceeds would convert to a Grantor Retained Annuity Trust ("GRAT") which would pay the trustor an annuity. If a trustor is living at the expiration of the trust term, the remaining QPRT or GRAT assets are distributed to the Children's Trust. The trustor may designate in his or her will who would receive the remaining QPRT or GRAT assets, subject to the interest of the Children's Trust, if he or she were to die during the term of the trust.

**¶5** Rakesh and Neera divorced in 2011. The decree did not allocate the residence because it was owned by the QPRTs and was no longer community property. In 2013, Rakesh and Narang as trustee of the Rakesh Malhotra QPRT ("Appellees") filed an action seeking to partition the residence owned by the QPRTs. Both parties filed motions for judgment on the pleadings. In allowing partition, the court concluded any interest the Children's Trust had in the remainder of each QPRT estate would remain the same after partition and, therefore, would not be prejudiced.

**¶6** Having decided it would allow partition, the court then held an evidentiary hearing to determine how to partition the property and allocate sales proceeds among the interested parties, and found the QPRTs had an equal share or interest in the property. Finding the residence could not be divided in kind and that partition "in time," as proposed by Appellants, was "impractical" and not supported by authority, the court ordered the residence sold in partition and the proceeds distributed equally to the two QPRT trustees. Appellants filed a timely notice of appeal from the order compelling partition.

---

Trust. Ranjan also sought to join in the answer and counterclaim filed by Neera and the Neera QPRT trustee. The court granted that motion. Therefore, the Intervenor has joined Neera and the Neera QPRT trustee's answer and has appeared pursuant to Rule 24(d). Additionally, the Intervenor joined every filing following that order, including the filings in this court, and Appellees did not object. Accordingly, the Intervenor has standing in this appeal.

**¶7**      In furtherance of the partition order, the trial court appointed a real estate agent to list the property for sale and ordered the parties to seek an emergency hearing if they disagreed with the agent's recommendation regarding a counteroffer.  Appellants filed a timely amended notice of appeal from this order.

**¶8**      After the amended order compelling partition, the realtor received two offers on the property in December 2015.  Appellants disagreed about whether to make a counteroffer of $1.7 million and requested an emergency hearing.  After the hearing, the trial court authorized the real estate agent to make a $1.7 million counteroffer that would be binding upon Appellants.  That order was stayed by the trial court pending a ruling from this court on Appellants' motion to stay filed herein.

## ANALYSIS

**¶9**      Appellants present two issues on appeal: whether this residence is subject to partition and, if so, whether the partition order is proper in light of other remedies and adequately protects Appellants' interests.

### Partition is Permissible Under Arizona Law

**¶10**      Whether this QPRT-owned property is subject to partition is a question of law that we review de novo.  *See In re Naarden Trust,* 195 Ariz. 526, 528, ¶ 4 (App. 1999).  An owner of any interest in real property may seek partition of the property between himself and other owners of the property.  Ariz. Rev. Stat. ("A.R.S.") § 12-1211; *see also McCready v. McCready,* 168 Ariz. 1, 3 (App. 1991) (recognizing that "the right of partition is an incident of common ownership").  Arizona partition law is governed by statute.  *See* A.R.S. §§ 12-1211 to -1225; *Cohen v. Frey*, 215 Ariz. 62, 65, ¶ 6 (2007) (explaining "partition is a statutory procedure and, absent an agreement between the parties to voluntarily divide the property, any remedy must comply with the statutory scheme").

**¶11**      The key Arizona statute is A.R.S. § 12-1220(A):

> When a partition is made between an owner who holds an estate for a term of years or for life with others who hold equal or greater estates, the partition shall not be prejudicial to those entitled to the reversion or remainder of such estates.

4

Appellants contend that under A.R.S. § 12-1220(A), partition is not available because there are non-concurrent property interests involved; specifically, the Rakesh QPRT terminates in 2020 while the Neera QPRT terminates in 2030, and the Children's Trust has remainder interests in the property of each QPRT. We agree with Appellants that § 12-1220(A) applies, but we conclude it allows, rather than prohibits, partition because the beneficial and future interests can be protected.

¶12            When interpreting a statute, "[w]ords and phrases shall be construed according to the common and approved use of the language." A.R.S. § 1-213. "We first look to the plain language of the statute as the most reliable indicator of its meaning." *Special Fund Div. v. Indus. Comm'n (Sordia)*, 224 Ariz. 29, 31, ¶ 8 (App. 2010). "If the language is clear and unambiguous, we give effect to that language and do not employ other methods of statutory construction." *State v. Pledger*, 236 Ariz. 469, 471, ¶ 8 (App. 2015). *See also Prince & Princess Enters., LLC v. State ex rel. Ariz. Dep't of Health Servs.*, 221 Ariz. 5, 6, ¶ 5 (App. 2008).

### Non-Concurrent Interests Do Not Preclude Partition

¶13            This case does not fit neatly into the traditional property concepts of life estates and fee interests. The trustees of each QPRT hold legal title to the trust property for differing terms of years, and each trustor has a beneficial residency interest in the trust property for differing terms of years. *See Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 72, ¶ 16 (App. 2011) ("In a trust, the trustees hold *legal title* and the beneficiaries hold *equitable title*.") (citing *Dunlap Investors Ltd. v. Hogan*, 133 Ariz. 130, 132 (1982) (emphasis in original)).

¶14            Accordingly, A.R.S. § 12-1220(A) is applicable because the trustors and the QPRTs (by the respective trustees) own interests in the real property in the form of "estate[s] for a term of years or for life." *See* Thomas F. Bergin & Paul G. Haskell, *Preface to Estates in Land and Future Interests*, 38 (2d ed. 1984) ("An estate for years, also commonly called a term of years or a lease for years, is an estate the duration of which is absolutely computable . . . from the moment of its creation") (footnote omitted); *see also* A.R.S. § 14-1201(17) (defining "estate" as property of the trust); A.R.S. § 14-10103(13) (defining "property" as "anything that may be the subject of ownership, whether real or personal, legal or equitable, or any interest in anything that may be the subject of ownership."). The QPRTs currently own legal title to

the entire property equally but for differing durations, and Rakesh's and Neera's possessory interests also exist for differing durations.

¶15     Appellants contend § 12-1220(A) should be interpreted as prohibiting partition because of the non-concurrent interests. They rely on *Beach v. Beach*, 74 P.3d 1, 3-5 (Colo. 2003), which applied a Colorado common law rule that partition is permitted only for concurrent interests and held that a party with a life estate in an addition on a home was not entitled to partition with the owner of the remainder interest in the addition. But Arizona partition law is governed by statute. *See supra* ¶ 10. Under § 12-1220(A), partition is permitted between the owner of an estate for years or life "with others who hold equal or greater estates," so long as partition does not prejudice the rights of the reversion or remainder holders. Colorado had no such statute in place at the time *Beach* was decided and that case is therefore unpersuasive.

## Appellants Are Not Prejudiced by Partition

¶16     The trust property is defined as the "undivided one-half (1/2) interest in the Residence." The QPRTs define "the Residence" as the current home "and any substitute personal residence acquired by the Trustee[s] in accordance with the provisions of this Agreement." Pursuant to the QPRT terms, the residence may be sold without altering the nature of the trust. The sales proceeds must be used to purchase a replacement residence (also subject to the QPRT) or be converted to an annuity subject to similar terms. Thus, the QPRTs through their trustees remain owners of the trust property, whether that property is the current residence, a GRAT annuity, or a replacement residence, for the term of each party's trust, *i.e.,* until 2020 for the Rakesh QPRT and 2030 for the Neera QPRT.

¶17     Appellants' interests until 2030 are not necessarily in the current residence, but in the trust property that, under the terms of the Neera QPRT, is "the Residence" or "any substitute residence" or an annuity if no replacement residence is purchased within two years. As a result, partition does not affect Neera's beneficial interest in the *trust property*. Similarly, the Children's Trust holds a remainder interest in the trust property, whatever form that may take over time. In light of the fact that the QPRTs expressly define "the Residence" to include a substitute residence in which Appellants' interests would continue after a partition, the different lengths of the QPRT terms do not preclude partition in this case.

### Partition Does Not Grant Appellees a Greater Estate

¶18        Appellants argue that partition is not possible in this case because it grants Appellees a greater interest than they own at present, citing a Texas case, *Luker v. Luker,* 226 S.W.2d 482 (Tex. Civ. App. 1949). *Luker* held that the trial court erred in awarding the partition plaintiff a fee simple title to the parcel in which he owned only a one-third life estate. *Id.* The appellate court held that "[a] life estate and a reversionary estate in a tract of land are distinct and separate estates" owned in severalty, not in common. *Id.* at 483. Applying a statute nearly identical to A.R.S. § 12-1220(A),[2] *Luker* held that because the partition plaintiff did not own a fee estate, he was not entitled to participate in partition to obtain a higher estate than he currently owned. *Id.* The court did not hold the partition plaintiff had no right to partition at all. *Id.* Appellants' citation to *Evans v. Graves,* 166 S.W.2d 955, 959 (Tex. Civ. App. 1942), is also unpersuasive because the court in that case held only that the holder of a life estate interest cannot obtain a *fee interest* in a partition action.

¶19        A sale would entitle Rakesh to an annuity until 2020 or would allow the trustee to purchase a replacement residence in which Rakesh would have a right to live rent-free until 2020, when it would then go to the Children's Trust, unless he dies before 2020 and leaves his reversionary interest to a third party. Similarly, Neera would have an interest in a replacement home or annuity payment until 2030. We conclude, therefore, that partition does not give Appellees a "greater estate" than they already have.

### Rakesh Did Not Waive Right to Partition

¶20        Appellants also contend that partition is not permitted because the terms of the QPRTs do not expressly provide for partition and

---

[2] The Texas statute, Article 6098, R.C.S., stated, "When a partition is made between a joint owner who holds an estate for a term of years or for life with others who hold equal or greater estates, such partition shall not be prejudicial to those entitled to the reversion or remainder of such estates." This version was repealed in 1983 and replaced with V.T.C.A. § 23.003, which states, "A partition of real property involving an owner of a life estate or an estate for years and other owners of equal or greater estate does not prejudice the rights of an owner of a revision or remainder interest."

by entering into the QPRTs, the parties waived any right to partition. However, nothing in the QPRTs expressly precludes partition, and the voluntary or involuntary sale of the residence is permitted.[3]

¶21            Generally, a waiver of the right to partition occurs if a partition would violate the parties' agreement. *See Cohen,* 215 Ariz. at 65-66 (holding wife's right to partition waived because she previously agreed husband alone had right to live in or sell house as he chose). The QPRTs, however, do not implicitly or explicitly waive the right to partition. The QPRTs allow a sale of the residence, and a sale does not necessarily negate the tax benefits of the QPRTs.

¶22            Furthermore, Appellants' expert testified that the QPRTs could have included additional restrictions on partition to the extent such provisions do not violate applicable tax regulations. There was no evidence presented that the Internal Revenue Code or other applicable regulations prohibit a partition sale of QPRT property. *See generally* 26 C.F.R. § 25.2702-5. Absent an express prohibition of partition in the QPRTs or the applicable regulations, Appellants failed to establish that placing real property in a QPRT constitutes a waiver of the right to partition.[4]

## Partition is Consistent with the QPRTs' Provisions

¶23            Appellants also argue partition is not permitted because the QPRTs prohibit commutation of the trustors' occupancy interests. The QPRTs state that "[c]ommutation of the Trustor's interest in this trust is prohibited." The term "commutation" is explained in 26 C.F.R. § 25.2702-5(c)(6), which states that a QPRT "must prohibit commutation (prepayment) of the term holder's interest." A partition sale would not constitute prepayment of the trustors' interests because any sales proceeds

---

[3] The QPRTs state that involuntary conversion has the same meaning as 26 U.S.C. § 1033(a) , which defines "involuntary conversion" as "theft, seizure, or requisition or condemnation."

[4] Appellants also contend there was a question of fact as to whether the trustors intended to waive partition rights by placing the property in the QPRTs and that the trial court erroneously decided the matter on the pleadings. However, Neera and the Neera QPRT trustee filed a motion for judgment on the pleadings making the same arguments they make on appeal. No evidence regarding the trustors' intent was necessary because this issue can be decided on the terms of the QPRTs. Therefore, judgment on the pleadings was proper.

are also governed by the terms of the Rakesh QPRT until 2020 and the Neera QPRT until 2030. Appellants offer no authority for their contention that commutation is synonymous with partition. No prepayment or commutation of the trustors' interests occurs with sale of the residence if the terms of the QPRTs are followed.

¶24 Although we recognize that a personal residence is unique, the QPRTs did not preclude the sale of the residence and a sale would not deny the trustors the opportunity to continue residing in *a residence* for the remaining term of each QPRT.

### The Children's Trust is Not Prejudiced by Partition

¶25 Although The Children's Trust cannot currently assert any rights that would preclude a sale of the residence, the Children's Trust has an interest as the remainder beneficiary of the QPRTs pursuant to A.R.S. § 14-10103(2)(a), which defines "beneficiary" as one with "a present or future beneficial interest in a trust, vested or contingent." *See also Pilafas,* 172 Ariz. at 210 ("Even a revocable trust vests the trust beneficiary with a legal right to enforce the terms of the trust."); *In re Herbst,* 206 Ariz. 214, 218, ¶ 21 (App. 2003) (same). Therefore, the interests of The Children's Trust are entitled to the protections afforded in the Arizona Trust Code. *See* A.R.S. §§ 14-10801 to 14-10804 and 14-11001 to 14-11003.

¶26 The Children's Trust is not prejudiced here because it has an interest in the trust property, but not the particular residence. Moreover, the Children's Trust has remedies under the Arizona Trust Code if the trustees do not comply with the terms of the QPRTs.

### Partition in Time

¶27 Appellants asked the trial court to consider a partition in time that would authorize Rakesh to occupy the residence until the Rakesh QPRT terminated in 2020, with Neera to occupy the residence until 2030. Rakesh rejected this offer because he did not want to live in a 7000 square foot house as a single person. The trial court concluded partition in time was impractical and that there was very little authority for doing so. Appellants cite only a case involving two parties with competing claims to ownership of a chair. *See In re Estate of McDowell,* 345 N.Y.S.2d 828, 830 (N.Y. Sur. Ct. 1973). That court ordered the parties to share possession of the chair for alternating six-month periods because the chair was "without

any apparent value other than of a sentimental nature." *Id.* In contrast, the residence here has substantial monetary value.

¶28 Appellants' position would result in both parties having a non-modifiable "exclusive right to the use, occupancy and enjoyment of the [r]esidence" until 2020. The partition remedy the trial court granted is appropriate here, where the co-owners of real property cannot reasonably both occupy the property and "the court cannot arbitrarily decide that one shall have the property to the exclusion of the other." *McCready*, 168 Ariz. at 4 (citing 68 C.J.S. § 168(2) (1950)). A sale is therefore appropriate, and the court did not abuse its discretion in ordering partition by sale instead of attempting a partition in time.[5]

## Other Equitable Relief

¶29 Appellants further contend the trial court erred by denying their request for other forms of equitable relief. Appellants argue this was necessary and permissible under the Arizona Trust Code to mitigate the prejudice to the future interest holder, *i.e.*, the Children's Trust. The additional requested relief included (1) determining Rakesh's claim for past GRAT payments before distribution of any sales proceeds, (2) allocating sales proceeds in a manner other than fifty percent to each QPRT, (3) additional instructions to trustees such as limiting Rakesh's ability to change trustees, and (4) requiring court approval before making past GRAT payments to Rakesh. Appellants argue these protections are necessary because they fear Rakesh will claim past payments because he has not been living in the house since 2006 and he has changed trustees twice.

¶30 The trial court appropriately declined to impose such additional restrictions because Appellants failed to establish that Appellees were not entitled to seek past GRAT payments and the remainder beneficiaries have a remedy under the Arizona Trust Code to protect their interests if, in fact, Appellees have violated the terms of the trust. *See* A.R.S. §§ 14-10201 (court may intervene in administration of trust in any matter

---

[5] Appellants argue the court also erred by failing to appoint commissioners to attempt a fair division in kind pursuant to A.R.S. §§ 12-1214 to 12-1218. However, the parties agreed partition in kind, *i.e.*, dividing the property into multiple parcels, was not possible. Appellants cannot now argue on appeal the court erred by failing to do so.

including a request for instructions or action to declare rights); 14-11001 (remedies for breach of trust); 14-11002 to 11003 (setting forth damages).

**¶31** To the extent Appellants' request for equitable relief pursuant to A.R.S. § 14-10201(A) and (C) constituted a request for instructions pursuant to A.R.S. § 14-10201(A), this request was premature. If the need should arise, the remainder beneficiaries have the ability to protect their interests. Accordingly, we affirm the denial of equitable relief.

## CONCLUSION

**¶32** For these reasons, the order and amended order compelling partition are affirmed, and Appellants' motion to stay the sale of the property is denied.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA